SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Sam Hargrove, et. al. v. Sleepy's, LLC (A-70-12) (072742)

**Argued March 17, 2014 -- Decided January 14, 2015**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers a question of law certified and submitted by the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-1. Specifically, the Court decides which test should be applied under New Jersey law to determine whether a plaintiff is an employee or an independent contractor for purposes of resolving a wage-payment or wage-and-hour claim.

Plaintiffs Sam Hargrove, Andre Hall, and Marco Eusebio deliver mattresses ordered by customers from defendant Sleepy's, LLC. Plaintiffs contend that they suffered various financial and non-financial losses as a result of defendant's misclassification of them as independent contractors, rather than employees. Plaintiffs each signed an Independent Drive Agreement, which they assert was a ruse by defendant to avoid payment of employee benefits. They contend that the misclassification violates state wage laws.

The question of whether plaintiffs are employees or independent contractors was submitted to the United States District Court for the District of New Jersey on cross motions for summary judgment. That court, applying the factors to be considered in defining an employee under the Employment Retirement Income Security Act (ERISA), held that the undisputed facts demonstrated that plaintiffs were independent contractors.

Plaintiffs filed a notice of appeal. Following oral argument, the Court of Appeals filed a petition with this Court seeking to certify a question of law pursuant to Rule 2:12A-1. The Court asked: Under New Jersey law, which test should a court apply to determine a plaintiff's employment status for purposes of the New Jersey Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14, and the New Jersey Wage and Hour Law (WHL), N.J.S.A. 34:11-56a to -56a38? This Court granted the petition. 214 N.J. 499 (2013).

**HELD:** The "ABC" test derived from the New Jersey Unemployment Compensation Act, N.J.S.A. 43:21-19(i)(6), governs whether a plaintiff is an employee or an independent contractor for purposes of resolving a wage-payment or wage-and-hour claim.

1. The issue presented to this Court is a question of law requiring the interpretation of two statutes. Acknowledging that deference is afforded to the interpretation of the Department of Labor (DOL), the agency charged with applying and enforcing the WPL and the WHL, the Court's inquiry begins with the plain language of each statutory provision. If the Legislature's intent is clear from this language and the context of the provision within the statute, the law is applied as written, with guidance from the legislative objectives of the statute. When the statutory language is ambiguous, leads to a result inconsistent with any legitimate public policy objective, or is at odds with a general statutory scheme, the Court turns to extrinsic tools to discern legislative intent. (pp. 10-12)

2. The WPL, N.J.S.A. 34:11-4.1 to -4.14, governs the time and mode of payment of wages due to employees. Since it is a remedial statute and should be liberally construed, the Court, when considering its scope and application, is mindful of the need to further its remedial purpose. The WPL defines an "employee" as "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees." N.J.S.A. 34:11-4.1(b). Although neither the text of the WPL nor its implementing regulations offers any guidance as to the distinction between an employee and an independent contractor, the DOL has applied the test utilized for independent contractor determinations under the WHL to the WPL as well. (pp. 13-15)

3.  The WHL, N.J.S.A. 34:11-56a to -56a38, is designed to protect employees from unfair wages and excessive hours, establishing a minimum wage and overtime rate for certain employees.  It does not prescribe the minimum wage or overtime rate payable to independent contractors.  The WHL defines "employ" as "to suffer or to permit to work," N.J.S.A. 34:11-56a1(f), and "employee" as "any individual employed by an employer," N.J.S.A. 34:11-56a1(h).  "Employer" includes "any individual, partnership, association, corporation, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." N.J.S.A. 34:11-56a1(g).  The WHL's implementing regulations, adopted by the DOL, provide that the criteria identified in N.J.S.A. 43:21-19(i)(6)(A)-(C) of the Unemployment Compensation Act will be used to determine whether an individual is an employee or independent contractor.  This test is commonly referred to as the "ABC" test.  It presumes that an individual is an employee unless an employer can show that: (1) the employer neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work; (2) the services provided were either outside the usual course of business or performed outside of all the places of business of the enterprise; and (3) the individual has a profession that will plainly persist despite termination of the challenged relationship.  Failure to satisfy any one of these three criteria results in an "employment" classification.  (pp. 15-19)

4.  The dispute here is grounded in the failure of the text of the WPL and its implementing regulations to, like the WHL, prescribe a standard to guide the distinction between an employee and an independent contractor.  Of the various tests proposed by the parties, the common law "right to control test" is the narrowest, focusing on whether an individual's actions were so controlled by a superior as to render the individual an employee.  It is ultimately a totality-of-the-circumstances evaluation, requiring courts to consider factors such as the skill required, the location of the work, and the extent of the worker's discretion over when and how long to work.  The "right to control" test is the de facto test that is implemented when the employment relationship is not defined by legislation.  The hybrid test is derived from tests refined and established in case law over time and arose from the Court's evaluation of the employment status of a plaintiff seeking the protection of the Conscientious Employee Protection Act (CEPA) or other remedial legislation.  In such cases, the hybrid test requires that courts look primarily to three factors to determine status:  (1) employer control; (2) the worker's economic dependence on the work relationship; and (3) the degree to which there has been a functional integration of the employer's business with that of the worker.  Finally, the "economic realities" test arose under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-19, which contains the broadest definition of "employee" among any social legislation statutes:  "Any individual employed by an employer." 29 U.S.C.A. § 203(e)(1).  In light of this expansive definition, federal courts seeking to determine an individual's employment status adopted a totality-of-the-circumstances standard that determines whether, as a matter of economic reality, the individuals are dependent upon the business they serve.  In making this determination, courts will consider the degree of the employer's control over the work, the worker's opportunity for profit or loss, the worker's investment in equipment or materials or employment of helpers, any special skills required, the degree of permanence of the working relationship, and whether the service rendered is an integral part of the employer's business.  (pp. 19-28)

5.  Regarding which test should be applied to determine, under the WHL and WPL, whether a worker is an employee or independent contractor, examination of the plain language of the relevant provisions and implementing regulations leads to the conclusion that the same test or standard should be applied under both statutes.  Since no good reason was proffered to depart from the standard adopted by the DOL to guide employment status determinations or to disregard the long-standing practice of treating both statutory schemes in tandem, the Court holds that any employment-status dispute arising under the WPL and WHL should be resolved by utilizing the "ABC" test set forth in N.J.S.A. 43:21-19(i)(6)(A)-(C).  This conclusion is supported by the similarities in the statutes' definitions of "employ" or "employee," as well as the similar purpose of both statutes.  (pp. 28-30)

6.  Although the FLSA also uses similar language in its relevant definitions, the Court discerns no reason to depart from the test adopted by the DOL in the WHL's implementing regulations.  The "ABC" test provides more predictability and may cast a wider net than the FLSA "economic realities" test.  The latter test is guided by six criteria, none of which is determinative.  Instead, the test contemplates a qualitative analysis of each case, which may yield a different result from case to case.  By contrast, under the "ABC" test, classification as an independent contractor requires that the employer demonstrate that the retained individual satisfies all three criteria.  This fosters the provision of greater income security for workers, which is the express purpose of both the WPL and the WHL.  For the same reasons, the Court rejects the common law "right to control" test, which was designed for utilization in

tort cases and is incompatible with the legislative purpose of insuring income security to wage-earners. Finally, although the hybrid test focuses on three factors that are similar to the "ABC" test, it is not limited to those factors and is applied on a case-by-case basis in the context of legislation that is designed to reach even those who are not traditionally considered employees under the common law "right to control" test. (pp. 30-35)

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA join in JUDGE CUFF's opinion.**

SAM HARGROVE, ANDRE HALL and
MARCO EUSEBIO,

    Plaintiffs-Appellants,

        v.

SLEEPY'S, LLC,

    Defendant-Respondent,

        v.

I STEALTH, EUSEBIO'S TRUCKING
CORP., and CURVA TRUCKING,
LLC,

    Third-Party Defendants.


        Argued March 17, 2014 – Decided January 14, 2015

        On certification of question of law from the
        United States Court of Appeals for the Third
        Circuit.

        Anthony L. Marchetti, Jr., and Harold L.
        Lichten, a member of the Massachusetts bar,
        argued the cause for appellants (Marchetti
        Law, attorney).

        Matthew J. Hank, a member of the
        Pennsylvania bar, argued the cause for
        respondent (Littler Mendelson, attorneys;
        Mr. Hank, Kimberly J. Gost, Elizabeth Tempio
        Clement, and Holly E. Rich, on the briefs).

        Donna S. Arons, Deputy Attorney General,
        argued the cause for amicus curiae
        Department of Labor and Workforce
        Development (John J. Hoffman, Acting
        Attorney General of New Jersey, attorney;

1

Melissa H. Raksa, Assistant Attorney
General, of counsel).

Melville D. Miller, Jr., President, argued
the cause for amicus curiae Legal Services
of New Jersey (Mr. Miller, attorney; Mr.
Miller, Keith G. Talbot, Akil S. Roper, and
Sarah S. Hymowitz, on the brief).

David A. Tykulsker submitted a brief on
behalf of amicus curiae International
Brotherhood of Teamsters (David Tykulsker &
Associates, attorneys).

Richard M. Schall and Bennet D. Zurofsky
submitted a brief on behalf of amici curiae
National Employment Lawyers Association of
New Jersey, New Jersey Industrial Union
Council, and National Employment Law Project
(Schall & Barasch, attorneys).

Richard M. Hluchan submitted a brief on
behalf of amicus curiae National Federation
of Independent Business Small Business Legal
Center (Hyland Levin, attorneys; Mr. Hluchan
and Mark N. Suprenant, on the brief).

Denise M. Keyser submitted a brief on behalf
of amicus curiae Academy of New Jersey
Management Attorneys (Ballard Spahr,
attorneys; Ms. Keyser and Amy L. Bashore, on
the brief).

JUDGE CUFF (temporarily assigned) delivered the opinion of
the Court.

This matter presents a question of law certified and
submitted by the United States Court of Appeals for the Third
Circuit pursuant to Rule 2:12A-1.  We have been asked which test
a court should apply under New Jersey law to determine an

2

employee's status for purposes of the Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14, and the Wage and Hour Law (WHL), N.J.S.A. 34:11-56a to -56a38. We conclude that the "ABC" test derived from the New Jersey Unemployment Compensation Act, N.J.S.A. 43:21-19(i)(6), governs whether a plaintiff is an employee or independent contractor for purposes of resolving a wage-payment or wage-and-hour claim.

## I.

Plaintiffs Sam Hargrove, Andre Hall, and Marco Eusebio (collectively plaintiffs) deliver mattresses ordered by customers from defendant Sleepy's, LLC. Plaintiffs assert that they are employees of Sleepy's, that Sleepy's miscategorized them as independent contractors, and that such misclassification caused various financial and non-financial losses to them. Plaintiffs assert that the Independent Driver Agreement signed by each of them was a ruse to avoid payment of employee benefits, such as health insurance, deferred compensation benefits, and medical or family leave. They allege that the misclassification violates state wage laws.

The issue of whether plaintiffs are employees or independent contractors was submitted to the United States District Court for the District of New Jersey on cross motions for summary judgment. United States District Judge Peter

3

Sheridan held that the undisputed facts demonstrated that plaintiffs were independent contractors. The district court relied on the factors identified in Nationwide Mutual v. Darden, 503 U.S. 318, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992), an opinion that identified the factors to be considered in defining an employee under the Employment Retirement Income Security Act (ERISA), 29 U.S.C.A. §§ 1001-1461.

Plaintiffs filed a notice of appeal. Following oral argument, the Court of Appeals filed a petition with this Court seeking to certify a question of law pursuant to Rule 2:12A-1. The Court of Appeals posed the following question: "Under New Jersey law, which test should a court apply to determine a plaintiff's employment status for purposes of the New Jersey Wage Payment Law, N.J.S.A. []34:11-4.1, et seq., and the New Jersey Wage and Hour Law, N.J.S.A. []34:11-56a, et seq.?" This Court granted the petition. 214 N.J. 499 (2013).

## II.

### A.

Plaintiffs argue that a single test should apply to determine employment status. They emphasize that misclassification of employees as independent contractors creates significant societal costs due to billions of dollars in lost revenue to state and federal governments. Plaintiffs

4

advance three alternative tests that might control the resolution of the central issue in the case. They contend that this Court should conclude "at the very least" that the hybrid "relative nature of the work" test set forth in D'Annunzio v. Prudential Insurance Co. of America, 192 N.J. 110 (2007), should be adopted for purposes of determining employment status under this State's wage laws. In the alternative, plaintiffs argue that this Court should adopt the broad "ABC" test followed by the New Jersey Department of Labor (DOL) to interpret and apply the definitions contained in the WHL to resolve WHL and WPL claims. If this Court concludes that neither the hybrid "relative nature of the work" test nor the "ABC" test governs, plaintiffs urge application of the "economic realities" test as under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201-19. Plaintiffs urge that in no event should this Court conclude that the common law "right to control" test applies. They contend that the common law test was designed to determine whether a master was liable to third parties for the negligent acts of an agent and was never intended to protect or address the financial security of employees.

B.

Defendant urges the adoption of a two-tiered analysis for determining employee status under the WPL. First, the plaintiff

5

should be required to prove that the defendant is contractually obligated to pay wages to him or her. If that prong is established, a court should proceed to determine whether that contract rendered the plaintiff an employee or independent contractor. According to defendant, the second prong should be analyzed in accordance with the "control" test derived from the Restatement (Second) of Agency § 220(2) (1958). Defendant emphasizes that this test existed at the time of adoption of the WPL and that the courts of this State have long used this test to determine whether an individual was an independent contractor. Defendant reasons that this test likely informed the Legislature when it drafted and adopted the WPL.

Defendant urges this Court not to decide the governing test for determining employee status under the WHL because plaintiffs have not referred to this statute in their complaint. Defendant urges this Court to apply the "economic realities" test as under FLSA, should it address the WHL.

### C.

This certified question has attracted the interest of several associations, organizations, a union, legal services projects, and the Department of Labor and Workforce Development

6

of the State of New Jersey.[1]  Some amici curiae emphasize that

misclassification of employees as independent contractors is now

common in many industries, causing a cumulative societal effect

of less protection for an increasing number of workers and

reduced revenue to the federal and state governments due to

unpaid taxes and assessments.  Other amici urge that there is

little valid justification to re-order economic relationships

that would occur from an expansive construction of the term

"employee."  These amici urge a narrow construction of

"employee" that recognizes and preserves the legitimate role

that true independent contractors play in our modern economy.

Specifically, amicus curiae International Brotherhood of

Teamsters (IBT) urges that the Court should use the "relative

nature of the work" standard as a supplement to the "right to

control" test to distinguish between an employee and an

independent contractor.  IBT notes that other regulatory schemes

---

[1] Litigation addressing the employment status of delivery drivers
has been filed throughout the country.  See, e.g., Slayman v.
FedEx Ground Package Sys. Inc., 765 F.3d 1033 (9th Cir. 2014)
(applying Oregon law to determine employment status of FedEx
Ground Package delivery drivers in Oregon); Alexander v. FedEx
Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014)
(applying California law to determine employment status of FedEx
Ground Package delivery drivers in California); Craig v. FedEx
Ground Package Sys., Inc., 335 P.3d 66 (Kan. 2014) (applying
Kansas law to determine employment status of FedEx Ground
Package delivery drivers in Kansas); 863 to Go, Inc. v. Dep't of
Labor, 99 A.3d 629 (Me. 2014) (applying Maine law to determine
employment status of delivery drivers under Maine law).

that utilize the "suffer or permit" language have interpreted the phrase to reach those traditionally considered independent contractors, such as musicians and dancers regularly employed at bars and restaurants, if the activity furthers the business of the regulated enterprise.  See, e.g., G. & J.K. Enters., Inc. v. Div. of Alcoholic Beverage Control, 205 N.J. Super. 77 (App. Div. 1985) (holding regulation reaches dancers regularly appearing at bar), certif. denied, 102 N.J. 397 (1986); Freud v. Davis, 64 N.J. Super. 242 (App. Div. 1960) (holding regulation reaches drummer regularly playing at bar).  IBT also cites a plethora of wage-and-hour laws enacted in other states that have interpreted the "suffer or permit" language that appears in the WPL and WHL to embrace "so-called independent contractors who were economically dependent on the enterprise and whose work advanced the business of the enterprise[.]"

Amicus curiae Legal Services of New Jersey (LSNJ) urges the Court "to embrace a test that reflects the full historical breadth of the statutory 'suffer and permit' language," and one that will "be flexible enough to apply readily to a full range of foreseeable circumstances and evasive schemes."  LSNJ urges a "totality of the circumstances" test that includes the following considerations: control, functional integration, economic dependence, and the direct or indirect power through the

8

exercise of reasonable diligence to avoid or rectify statutory violations. LSNJ asserts that this test harmonizes and unifies federal and other state jurisprudence in the wage-enforcement context with the DOL independent-contractor regulation.

Amicus curiae DOL observes that the WPL and WHL "work in tandem to provide a panoply of wage protections for employees." DOL states that it has traditionally interpreted and implemented both statutes using the "ABC" test set forth in N.J.A.C. 12:56-16.1.

Amici curiae National Employment Lawyers Association of New Jersey, New Jersey Industrial Union Council, and National Employment Law Project urge this Court to confirm that the D'Annunzio test applies to the WPL and WHL. They contend that the WPL and WHL are considered remedial legislation -- the type for which that test was developed. Furthermore, employees, such as plaintiffs, should not be required to demonstrate their employee status because shifting the burden to the employee undermines this State's workplace protections.

Amicus curiae Academy of New Jersey Management Attorneys (ANJMA) supports defendant's position that the common law "right to control" test articulated in Restatement (Second) of Agency, supra, § 220(2) should govern the definition of "employee" under the WPL. In the alternative, ANJMA urges adoption of the

9

"economic realities" test for the WPL and WHL because that test would harmonize state law with federal law, particularly FLSA. Finally, ANJMA argues that neither the D'Annunzio test nor the "ABC" test should apply to either the WPL or WHL.

Amicus curiae National Federation of Independent Business Small Business Legal Center also supports defendant Sleepy's. It urges that the test must initially consider whether the laborer performed services pursuant to a legitimate contract between independent businesses. It contends that the threshold determination is which entity is the most likely employer and that an "employment test is inapposite when the economic relationship is an arms-length service agreement between separate companies." It emphasizes that the Legislature never intended to disregard business formalities or the recognition of sole proprietorships and partnerships as independent businesses.[2]

### III.

The issue presented to this Court is a question of law that requires the interpretation of two statutes -- the WPL and WHL. Both define the term "employee." See N.J.S.A. 34:11-4.1b (WPL);

---

[2] Neither plaintiffs, defendant, nor any amici urge adoption of the Darden ERISA test utilized by the District Court.

N.J.S.A. 34:11-56a (WHL).[3]  The WHL by regulation, N.J.A.C. 12:56-16.1, adopts the criteria identified in the Unemployment Compensation Law to distinguish between an employee and independent contractor, N.J.S.A. 43:21-19(i)(6)(A), (B), and (C).  As evidenced by the arguments presented by the parties and amici, various tests derived from various sources have been used to distinguish between an employee and an independent contractor and thereby determine which individuals fall within the protection of various remedial statutory provisions.

The task presented to us in this certified question involves interpretation of two complementary statutes to determine and effectuate the intent of the Legislature.  See Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012) (citing Allen v. V & A Bros., Inc., 208 N.J. 114, 127 (2011)).  We commence our inquiry with the plain language of each provision and accord to it the ordinary meaning of the words selected by the Legislature.  DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)).  As stated in Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013),

---

[3] Although defendant urges that we not address the WHL, we do so because the certified question asks this Court to address the governing standard for the WPL and WHL.

> [i]f the Legislature's intent is clear from the statutory language and its context with related provisions, we apply the law as written. Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004). We are also guided by the legislative objectives sought to be achieved by the statute. Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). We turn to extrinsic tools to discern legislative intent, however, only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme. Ibid.; DiProspero, supra, 183 N.J. at 492-93.

We must also acknowledge the deference that should be afforded to the interpretation of the agency charged with applying and enforcing a statutory scheme. Although not bound by an agency's determination on a question of law, In re Distribution of Liquid Assets Upon Dissolution of Union County Regional High School District No. 1, 168 N.J. 1, 11 (2001), our courts give "'great deference'" to an agency's "'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible," New Jersey Ass'n of School Administrators v. Schundler, 211 N.J. 535, 549 (2012) (quoting New Jersey Society for Prevention of Cruelty to Animals v. New Jersey Department of Agriculture, 196 N.J. 366, 385 (2008)); see also In re Election Law Enforcement Commission Advisory Opinion No. 01-2008, 201 N.J. 254, 262 (2010).

A.

12

The Wage Payment Law

The WPL, N.J.S.A. 34:11-4.1 to -4.14, governs the time and mode of payment of wages due to employees. Generally, an employer must pay an employee at least twice during a calendar month, N.J.S.A. 34:11-4.2; the employer may deposit the wages due to an employee directly into an account maintained by the employee in a financial institution, N.J.S.A. 34:11-4.2a; the employer must pay any wages due to an employee who has resigned or been discharged or laid off no later than the regular payday for the pay period during which the separation occurred, N.J.S.A. 34:11-4.3; and the employer must pay to a certain person or persons all wages due a deceased employee, N.J.S.A. 34:11-4.5. The employer may not enter any agreement with an employee for the payment of wages except as provided by the statute other than to agree to pay wages more frequently than prescribed by the WPL or to pay wages in advance. N.J.S.A. 34:11-4.7. In the event of a dispute regarding the amount of wages due, the employer must pay all wages conceded to be due at the time payment is expected. N.J.S.A. 34:11-4.8(a). The WPL also requires an employer to give advance notice to any employee paid on a commission basis of any change in the method by which the commission is calculated. N.J.S.A. 34:11-4.1(b). An employee may also maintain a private cause of action for an

13

alleged violation of the law.  N.J.S.A. 34:11-4.7; Winslow v. Corporate Express, Inc., 364 N.J. Super. 128, 136 (App. Div. 2003).

Originally enacted in 1965, the WPL remained essentially unaltered, except for amendments in 1991 and 2001 authorizing, but imposing conditions on, the withholding or diverting of employee contributions to political action committees, L. 1991, c. 190, § 2, and concerning administration of the act, L. 1991, c. 91, § 353; L. 1991, c. 205, § 2; and L. 2000, c. 14, § 1. The WPL defines "employee" as "any person suffered or permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees."  N.J.S.A. 34:11-4.1(b); see N.J.A.C. 12:55-1.2.  "'Wages' means the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto."  N.J.S.A. 34:11-4.1(c); see N.J.A.C. 12:55-1.2.  Neither the text of the WPL nor its implementing regulations offer any guidance to distinguish between an employee and an independent contractor.

Amicus DOL advises the Court that "over time, the [DOL] has applied the 'ABC' test for independent contractor determinations

14

under the WPL as well." DOL refers the Court to an explanation that accompanied N.J.A.C. 12:56-16.1 (implementing the WHL) that provides that "it is necessary to include reference to this criterion in the Wage and Hour rules since an individual's employment status impacts determinations concerning entitlements under the minimum wage, overtime, wage payment and wage collection statutes." 27 N.J.R. 3958(a) (Oct. 16, 1995) (emphasis added). As a remedial statute, the WPL should be liberally construed. See Turon v. J. & L. Constr. Co., 8 N.J. 543, 558 (1952); see also Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 564 (App. Div.) (noting WPL's humanitarian purpose), certif. denied, 200 N.J. 476 (2009). We, therefore, approach any question regarding the scope and application of the WPL mindful of the need to further its remedial purpose.

B.

Wage and Hour Law

The WHL, N.J.S.A. 34:11-56a to -56a38, was enacted in 1966. The WHL declares that it is

> the public policy of this State to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being.
>
> [N.J.S.A. 34:11-56a.]

15

The WHL is designed to "protect employees from unfair wages and excessive hours." In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009) (quoting Keeley v. Loomis Fargo & Co., 183 F.3d 257, 259 (3d Cir. 1999), cert. denied, 528 U.S. 1138, 120 S. Ct. 983, 145 L. Ed. 2d 933 (2000)); see also Lane, supra, 23 N.J. at 316 (identifying two purposes of antecedent minimum wage legislation -- provision of wages 1) sufficient to meet minimum costs of healthy standard of living and 2) commensurate with value of service rendered); Council of N.J. Hairdressers, Inc. v. Male, 68 N.J. Super. 381, 386-87 (App. Div. 1961) (same). The statute should be construed liberally to effectuate its purpose. N.J. Dep't of Labor v. Pepsi-Cola Co., 170 N.J. 59, 62 (2001).

The WHL establishes not only a minimum wage but also an overtime rate for each hour of work in excess of forty hours in any week for certain employees. N.J.S.A. 34:11-56a4. It does not prescribe the minimum wage or overtime rate payable to independent contractors. The term "employ" includes "to suffer or to permit to work," N.J.S.A. 34:11-56a1(f), and "employee" includes "any individual employed by an employer," N.J.S.A. 34:11-56a1(h). "Employer" includes "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly in the interest of an

16

employer in relation to an employee." N.J.S.A. 34:11-56a1(g). The regulation adopted to implement the WHL provides that the criteria identified in N.J.S.A. 43:21-19(i)(6)(A)-(C) of the Unemployment Compensation Act and case law will be used to determine whether an individual is an employee or independent contractor. N.J.A.C. 12:56-16.1. This test is commonly referred to as the "ABC" test.

The "ABC" test presumes an individual is an employee unless the employer can make certain showings regarding the individual employed, including:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.
>
> [N.J.S.A. 43:21-19(i)(6).]

"[T]he failure to satisfy any one of the three criteria results in an 'employment' classification." Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 581 (1991).

17

In order to satisfy part A of the "ABC" test, the employer must show that it neither exercised control over the worker, nor had the ability to exercise control in terms of the completion of the work. Schomp v. Fuller Brush Co., 124 N.J.L. 487, 491 (Sup. Ct. 1940), aff'd, 126 N.J.L. 368 (E. & A. 1941). In establishing control for purposes of part A of the test, it is not necessary that the employer control every aspect of the worker's trade; rather, some level of control may be sufficient. Ibid.

Part B of the statute requires the employer to show that the services provided were "either outside the usual course of the business . . . or that such service is performed outside of all the places of business of the enterprise." N.J.S.A. 43:21-19(i)(6)(B). While the common law recognizes part B as a factor to consider, it is not outcome determinative within the confines of the "right to control" test. See Restatement (Second) of Agency, supra, § 220(e), (h).

Part C of the statute is also derived from the common law. This part of the test "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship. The enterprise must be one that is stable and lasting -- one that will survive the termination of the relationship." Gilchrist v. Div. of Emp't

18

Sec., 48 N.J. Super. 147, 158 (App. Div. 1957). Therefore, part C of the "ABC" test is satisfied when an individual has a profession that will plainly persist despite the termination of the challenged relationship. See, e.g., Trauma Nurses Inc. v. Bd. of Review, 242 N.J. Super. 135, 148 (App. Div. 1990) (holding nurses, who chose where and when they worked, could use other services or brokers to obtain assignments, and could practice nursing anywhere after termination of particular assignment, not employees of placement agency). When the relationship ends and the individual joins "the ranks of the unemployed," this element of the test is not satisfied. Schomp, supra, 124 N.J.L. at 491-92.

IV.

This dispute is grounded at base in the failure of either the text of the WPL or its implementing regulations to prescribe a standard to guide the distinction between an employee and an independent contractor. The regulations implementing the WHL expressly provide that the distinction between an employee and an independent contractor shall be resolved by reference to the "ABC" test set forth in the Unemployment Compensation Act. N.J.A.C. 12:56-16.1. With no such direction in the WPL, the parties offer various tests. The parties also advocate that

19

this Court depart from the standard adopted by the agency charged with implementing and enforcing both statutes. Plaintiffs urge application of a single test favoring the "relative nature of the work" test. Among the alternatives, plaintiffs prefer application of the "ABC" test or the "economic realities" test, conceding that the similar remedial purposes of the WPL and WHL suggest application of the "ABC" test. Defendant argues that this Court should hold that the "right to control" test derived from the Restatement (Second) of Agency, supra, § 220(1), should govern the definition of employee, and urges that the Court not adopt the "ABC" test, the hybrid test derived from D'Annunzio, supra, 192 N.J. 110, or the "economic realities" test.

A.

Right to Control Test

The "right to control" test is the narrowest of all of the tests. It focuses on whether an individual's actions were so controlled by a superior as to render the individual an employee for purposes of the law. See Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751, 109 S. Ct. 2166, 2179, 104 L. Ed. 2d 811, 831 (1989) ("In determining whether a hired party is an employee under the general common law of agency, we consider the

20

hiring party's right to control the manner and means by which the product is accomplished.").

The "right to control" test is derived from the Restatement (Second) of Agency, supra, § 220(1), which defines an employee or "servant" as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control."

The test is ultimately a totality-of-the-circumstances evaluation. In Reid, the United States Supreme Court summarized the process for determining whether a party is an employee under the common law "right to control" test as follows:

> Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
>
> [Reid, supra, 490 U.S. at 751-52, 109 S. Ct. at 2178-79, 104 L. Ed. 2d at 831-32 (footnotes omitted).]

21

The "right to control" test appears to be the de facto test that is implemented when legislation does not provide an obligatory method of defining the employment relationship. Relatedly, the United States Supreme Court has previously opined that when a statute does not provide a definition for the term "employee," a court should utilize the "right to control" test. Darden, supra, 503 U.S. at 322-23, 112 S. Ct. at 1348, 117 L. Ed. 2d at 589.

B.

Hybrid Test

The hybrid test is derived from D'Annunzio, supra, in which this Court refined the test in Pukowsky v. Caruso, 312 N.J. Super. 171, 182-83 (App. Div. 1998), which in turn relied on Franz v. Raymond Eisenhardt & Sons, 732 F. Supp. 521, 528 (D.N.J. 1990). The Franz test, articulated in the context of an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621-34, encompasses both the "right to control" test and the "economic realities" test. It requires a court to consider twelve factors in determining a worker's status:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation -- supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the

individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

[Franz, supra, 732 F. Supp. at 528 (quoting Equal Emp't Opportunity Comm'n v. Zippo Mfg. Co., 713 F.2d 32, 37 (3d Cir. 1983)).]

The Franz test recognizes that employment relationships can exist whereby employers control the work of specialized workers who may conduct work outside the scope of the employer's abilities but whose work remains integral to the employer's overall business scheme. D'Annunzio, supra, 192 N.J. at 124.

In Franz, supra, the court concluded that a terminated executive was an independent contractor rather than an employee. 732 F. Supp. at 529. The court found that the plaintiff's limited work schedule (one or two days a week), his focus on two accounts, and payment on a per diem basis without any benefits counselled in favor of a finding of an independent contractor instead of an employee. Ibid.

In Pukowsky, supra, the Appellate Division was required to determine whether the plaintiff was an employee or an independent contractor because an independent contractor is not protected by the Law Against Discrimination (LAD). 312 N.J.

23

Super. at 180.  Relying on the twelve Franz factors, the panel held that the plaintiff, an accomplished skater who used the defendant's skating rink to teach students recruited by her and paid directly by the students, was not an employee.  Id. at 183.

In D'Annunzio, supra, 192 N.J. at 119, the Court discussed the test for establishing an employee relationship in the context of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8.  CEPA defines "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration." N.J.S.A. 34:19-2(b).  The Court acknowledged the definition "includes more than the narrow band of traditional employees." D'Annunzio, supra, 192 N.J. at 121.  In fact, the Court noted that "the definition does not exclude, explicitly, persons who are designated as independent contractors performing services for an employer for remuneration."  Ibid.

In discussing which test applied for evaluation of the question of the employment status of a plaintiff seeking the protection of CEPA or other remedial legislation, this Court stated that "exclusive reliance on a traditional right-to-control test to identify who is an 'employee' does not necessarily result in the identification of all those workers that social legislation seeks to reach."  Ibid.  The Court went

24

on to emphasize three of the twelve factors of the Pukowsky/Franz test that are most pertinent when CEPA or other social legislation is invoked by a professional person or a person "providing specialized services allegedly as an independent contractor[.]"  Id. at 122.  Those factors are: "(1) employer control; (2) the worker's economic dependence on the work relationship; and (3) the degree to which there has been a functional integration of the employer's business with that of the person doing the work at issue."  Ibid.  Applying those factors to the plaintiff in D'Annunzio, a chiropractor hired by an insurance company to review and approve treatment plans, the Court concluded that the plaintiff could be considered an employee who could seek the protection afforded by CEPA.  Id. at 127; see also Lowe v. Zarghami, 158 N.J. 606, 618 (1999) (acknowledging different factors to determine employment status when claim derives from social legislation).

C.

Economic Realities Test

FLSA[4] defines "employee" as "[a]ny individual employed by an employer."  29 U.S.C.A. § 203(e)(1).  The statute provides that

---

[4] FLSA, applicable to employees engaged in interstate commerce or employed by an entity engaged in commerce, establishes a national minimum wage, 29 U.S.C.A. § 206, prohibits employment of minors in "oppressive child labor," 29 U.S.C.A. § 212, and

"'employ' includes to suffer or permit to work." 29 U.S.C.A. §
203(g). Congress and the courts interpreting and applying the
statute have remarked that FLSA contains the broadest definition
of employee among the statutes falling into the classification
of social legislation. See 81 Cong. Rec. 7657 (remarks of
Senator Hugo Black); Equal Emp't Opportunity Comm'n, supra, 713
F.2d at 37.

Due to that expansive definition, federal courts adopted a
totality-of-the-circumstances standard that "examine[s] the
circumstances of the whole activity and should consider whether,
as a matter of economic reality, the individuals are dependent
upon the business to which they render services." Donovan v.
DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir.)
(citations and internal quotation marks omitted), cert. denied,
474 U.S. 919, 106 S. Ct. 246, 88 L. Ed. 2d 255 (1985). The
standard requires consideration of the following factors in
evaluating employment status:

> "1) the degree of the alleged employer's
> right to control the manner in which the
> work is to be performed; 2) the alleged
> employee's opportunity for profit or loss
> depending upon his managerial skill; 3) the
> alleged employee's investment in equipment
> or materials required for his task, or his
> employment of helpers; 4) whether the

introduces the forty-hour workweek with "time-and-a-half" for
overtime, 29 U.S.C.A. § 207.

> service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business."
>
> [Ibid. (quoting Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981)).]

In DialAmerica, the court held that home researchers were employees and subject to the minimum-wage protection of FLSA. Id. at 1386. The court concluded that the undisputed facts satisfied five of the six Donovan factors: the investment in equipment or materials was small, the opportunity for profit or loss was small, the skills required were few, the work relationship was not transitory and precluded opportunities to work for other businesses, and the service provided was an integral part of the employer's business. Id. at 1383-86. Moreover, although the researchers worked from home, the manner in which they recorded their work product was rigidly controlled by the company. Id. at 1380.

By contrast, the distributors who performed home research and coordinated the activities of other home researchers were not considered employees for their role in delivering work to and collecting work from home researchers. Id. at 1386. The court reasoned that the company exercised little control over this activity -- the distributors paid all expenses of this activity and could recruit and set the compensation of those who

27

actually performed the distribution activities.  Ibid.
Moreover, the distributors required some managerial and record-keeping skills.  Id. at 1387.  Finally, the added tasks assumed by the distributors were not an integral part of the company business.  Ibid.

V.

The fundamental question presented to the Court is which test should be applied to determine, under the WHL and WPL, whether a given individual is an employee or an independent contractor who performs services for remuneration for an individual or a business concern.  The arguments presented by the parties and amici also urge departure from the test designated by the DOL to guide its determination of whether an individual is entitled to the protections afforded by the WHL.

Examining first the plain language of the WHL and WPL and then the regulations implementing both statutory schemes, we determine that the same test or standard should be employed to determine the nature of an employment relationship under both statutes.  We also conclude that no good reason has been presented to depart from the standard adopted by the DOL to guide employment status determinations or to disregard the long-standing practice of treating both statutory schemes in tandem. Therefore, we hold that any employment-status dispute arising

28

under the WPL and WHL should be resolved by utilizing the "ABC" test set forth in N.J.S.A. 43:21-19(i)(6)(A)-(C).

The WPL and WHL do not define "employee," "employer" or "employ" identically. Compare N.J.S.A. 34:11-4.1 (WPL definitions of "employee" and "employer"), with N.J.S.A. 34:11-56a1 (WHL definition of "employ"). Each statute, however, incorporates the terms "suffer or permit" in either the definition of "employee" or "employ." Compare N.J.S.A. 34:11-4.1(b) (WPL definition of "employee"), with N.J.S.A. 34:11:56a1(f) (WHL definition of "employ"). The similarity of language suggests that any interpretation or implementation issues should be treated similarly.

Of greater significance, however, is the purpose of both statutes. Like FLSA, the WPL and WHL address the most fundamental terms of the employment relationship. The WPL is designed to protect an employee's wages and to assure timely and predictable payment. Rosen v. Smith Barney, Inc., 393 N.J. Super. 578, 585 (App. Div.), certif. denied, 192 N.J. 481 (2007). To that end, it directs the mode and time of payment. See N.J.S.A. 34:11-4.2 to -4.5. The WHL is designed to protect employees from unfair wages and excessive hours. Raymour & Flanigan, supra, 405 N.J. Super. at 376. To that end, the WHL establishes a minimum wage for employees and the overtime rate

29

for each hour of work in excess of forty hours in any week. N.J.S.A. 34:11-56a4.  Statutes addressing similar concerns should resolve similar issues, such as the employment status of those seeking the protection of one or both statutes, by the same standard.  Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 175 (2006).

Admittedly, FLSA, WPL, and WHL use the term "suffer or permit" to define those who are within the protection of each statute.  We recognize that the "suffer or permit" language of FLSA has been construed as the broadest definition of "employee" among the various pieces of social legislation and that the federal courts have adopted the "economic realities" test. DialAmerica, supra, 757 F.2d at 1382.  Still, we discern no reason to depart from the test adopted by the DOL after adoption of the WHL.

We assume that the FLSA mandate for a federal minimum wage influenced the adoption in 1966 of the WHL to protect workers not covered by FLSA.  However, that fact alone does not require us to jettison now a standard adopted by the agency to distinguish between an employee and an independent contractor. New Jersey decided to take a different approach -- one that presumes a person seeking protection of the WPL or WHL is an employee -- and we must show deference to the agency charged

30

with interpreting and implementing this basic legislative initiative to achieve and maintain wage security for workers in this State. See Schundler, supra, 211 N.J. at 549. DOL asserts that the selection of this standard has never been challenged and no party or amici have refuted that contention. Furthermore, the "ABC" test operates to provide more predictability and may cast a wider net than FLSA "economic realities" standard.

The "ABC" test provides an analytical framework to decide whether a person claiming unemployment benefits or seeking the protection of the wage-and-hour provisions of the WHL or the wage-payment provisions of the WPL is an independent contractor or an employee. It presumes that the claimant is an employee and imposes the burden to prove otherwise on the employer.

The first inquiry concerns the control exercised by the individual or business of the person retained to perform a remunerated task. The inquiry must examine not only the terms of the contract of agreement to provide services but also the facts of the employment. In other words, the inquiry extends to all the circumstances attendant to the actual performance of the work. N.J.S.A. 43:21-19(i)(6)(A); see also Carpet Remnant, supra, 125 N.J. 582-83. In addition, the inquiry identifies the usual course of the business for which the individual has been

31

retained to provide services or the usual place or places at which the employer performs its business. N.J.S.A. 43:21-19(i)(6)(B). Finally, the inquiry focuses on the usual or customary trade, occupation, profession, or business of the person retained to perform services for the employer. N.J.S.A. 43:21-19(i)(6)(C). In order to be classified as an independent contractor, the retained individual must satisfy all criteria. "The failure to satisfy any one of the three criteria results in an 'employment' classification." Carpet Remnant, supra, 125 N.J. at 581.

By contrast, the FLSA "economic realities" test utilizes a totality-of-the-circumstances framework guided by six criteria. DialAmerica, supra, 757 F.2d at 1382. No one factor is determinative. Rather, the test contemplates a qualitative rather than a quantitative analysis of each case. Ibid. Such a test may then yield a different result from case to case. By contrast, requiring each identified factor to be satisfied to permit classification as an independent contractor, the "ABC" test fosters the provision of greater income security for workers, which is the express purpose of both the WPL and WHL.

For the same reasons, we reject the common law "right to control" test. For several decades, this State has recognized that the employment-status test should consider more than one

32

simple factor.  Moreover, the "right to control" test is not particularly well-suited to employment-status determinations. Designed for utilization in tort cases, see Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1544 (7th Cir. 1987), cert. denied, 488 U.S. 898, 109 S. Ct. 243, 102 L. Ed. 2d 232 (1988), it is incompatible with the legislative purpose of insuring income security to wage-earners.

The Court adopted the hybrid D'Annunzio test, which combines the "right to control" test and the "economic realities" test, to address disputes regarding who is entitled to the protection of our anti-discrimination and whistleblower statutes.  Both statutes seek to provide the broadest coverage to root out discrimination in the workplace and to protect individuals who speak out against workplace practices contrary to the public interest.  See N.J.S.A. 10:5-1 to -42; N.J.S.A. 34:19-1 to -8.  To that end, CEPA contains a very expansive definition of employee.  See N.J.S.A. 34:19-2(b).  This Court recognized that definition "includes more than the narrow band of traditional employees" and actually does not explicitly exclude independent contractors.  D'Annunzio, supra, 192 N.J. at 121.  We also recognized that certain social legislation, such as CEPA and LAD, is designed to reach those not traditionally considered an employee under the common law "right to control"

33

test, such as professionals or those retained to perform specialized services.  Id. at 122.  The three criteria utilized in Pukowsky -- employer control, worker economic dependence, and functional integration of the employer's business and the work performed -- considered the most pertinent to determine employment status for cases arising under CEPA and LAD, are similar, if not identical to the "ABC" test.  Compare D'Annunzio, supra, 192 N.J. at 122 (three Pukowsky criteria), with N.J.S.A. 43:21-19(i)(6)(A)-(C) (factors of "ABC" test).  On the other hand, although this Court identified the three most pertinent factors, it adopted the Pukowsky criteria in its entirety and embraced a totality-of-the-circumstances analysis of the employment-status inquiry.  D'Annunzio, supra, 192 N.J. at 122-23.  Therefore, unlike the "ABC" test, the D'Annunzio test is not limited to those three most pertinent factors.  Id. at 123-24.  Once again, permitting an employee to know when, how, and how much he will be paid requires a test designed to yield a more predictable result than a totality-of-the-circumstances analysis that is by its nature case specific.

VI.

In sum, we hold that the issue of employment status under the WPL and WHL should utilize a single test.  The DOL, the agency charged with implementation and enforcement of the WHL

34

and WPL, declared that the "ABC" test set forth in N.J.S.A. 43:21-19(i)(6)(A)-(C) should govern employment-status disputes under the WHL.  That rule has been applied without challenge since 1995.  The DOL has also applied the same test to employment-status issues under the WPL because of its similar purpose of furthering income security.  We are not persuaded that this long-standing approach to resolving employment-status issues needs any alteration.  Therefore, we hold that employment-status issues raised under the WPL or WHL -- i.e., whether a person retained to provide services to an employer is an employee or independent contractor -- are governed by the "ABC" test.

CHIEF JUSTICE RABNER; and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA join in JUDGE CUFF's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-70                      SEPTEMBER TERM 2012


ON CERTIFICATION of Question of Law From the United States
Court of Appeals for the Third Circuit


SAM HARGROVE, ANDRE HALL and
MARCO EUSEBIO,

    Appellants-Appellants,

            v.

SLEEPY'S LLC,

    Appellant-Respondent,

            v.

I STEALTH, EUSEBIO'S TRUCKING
CORP., and CURVA TRUCKING,
LLC,

    Third-Party Defendants.



DECIDED            January 14, 2015
                  Chief Justice Rabner                    PRESIDING

OPINION BY              Judge Cuff

CONCURRING/DISSENTING OPINIONS BY    _____

DISSENTING OPINION BY    _____


| CHECKLIST | AFFIRM | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |


1