**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0686-22

JONATHAN PENA
RODRIGUEZ,

     Plaintiff-Respondent,

v.

REYNALDO DE LA ROSA,

     Defendant-Appellant.

_____

          Submitted December 11, 2023 – Decided December 28, 2023

          Before Judges Sabatino and Marczyk.

          On appeal from the Superior Court of New Jersey, Law Division, Special Civil Part, Essex County, Docket No. DC-003474-22.

          The Law Firm of Hunt, Hamlin & Ridley, attorneys for appellant (Raymond Louis Hamlin, on the brief).

          Respondent has not filed a brief.

PER CURIAM

Defendant Reynaldo De La Rosa, a barber shop owner in Newark, appeals from a $15,000 judgment issued against him for overtime pay owed to plaintiff Jonathan Pena Rodriguez, in violation of New Jersey's Wage and Hour Law ("WHL"), N.J.S.A. 34:11-56a to -56a38. The judgment followed a four-day bench trial in the Special Civil Part, after which the trial judge concluded that plaintiff was defendant's employee, not an independent contractor exempt from the WHL's overtime regulations. The judge applied what is known as the "ABC test" of employment to the circumstances, N.J.S.A. 43:21-19(i)(6)(A)-(C).

As determined by the trial judge, the testimony of plaintiff and his witness shows that defendant hired him and other immigrants from the Dominican Republic to work six days per week, as barbers at defendant's barber shop, and to live in housing he owns. The judge found defendant's countering testimony on many of the key facts incredible.

Once liability was established, plaintiff was awarded $15,000 in unpaid wages, which was the jurisdictional maximum recovery in the Special Civil Part at the time of trial. The judge based the award on his calculation of an imputed hourly wage rate of $15.15, times 1.5 (pursuant to the overtime formula), times 52 weeks of overtime due for over a two-year period. That computed sum exceeded the $15,000 jurisdictional cap, even when the trial court lowered its

assumptions of hours worked and pay received. The judgment amount has been paid by defendant into the court and is being held in escrow pending this appeal.

On appeal, defendant argues the trial court: (1) misclassified plaintiff as his employee under the "ABC" test, (2) incorrectly calculated the unpaid wages owed to plaintiff and erroneously shifted to defendant the burden to prove the hours plaintiff worked, (3) improperly denied defendant's motion for a directed verdict at the close of plaintiff's case, (4) erroneously denied defendant's counterclaim against plaintiff for allegedly pursuing frivolous litigation, and (5) was biased against defendant and his trial attorney and was partial to plaintiff, who was self-represented at trial.[1]

Having considered these contentions of error in light of the record, our scope of appellate review, and applicable legal principles, we affirm.

The scope of our review of the trial court's findings in this non-jury case is limited. We review the record to determine whether the facts as found by the trial judge are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974). If we find that is so, we proceed to determine whether the judge properly applied the law to the facts as found. Ibid. We review de novo the trial judge's interpretation

---

[1] Plaintiff has not filed a responding brief on appeal.

A-0686-22

of the law and the judge's application of the law to the facts. <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995); <u>Yellen v. Kassin</u>, 416 N.J. Super. 113, 119 (App. Div. 2010).

The heart of this case concerns an application of the WHL. The statute is "designed to 'protect employees from unfair wages and excessive hours.'" <u>Hargrove v. Sleepy's, LLC</u>, 220 N.J. 289, 304 (2015) (citation omitted). "The WHL establishes not only a minimum wage but also an overtime rate for each hour of work in excess of <u>forty hours in any week</u> . . . ." <u>Ibid.</u> (citing N.J.S.A. 34:11-56a4) (emphasis added).

Employees are presumptively covered by the minimum wage and overtime regulations enacted under the WHL unless they meet the following criteria of an independent contractor, known as the "ABC" test:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact;
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; <u>and</u>
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

[N.J.S.A. 43:21-19(i)(6)(A)-(C) (emphasis added).]

"The ABC test is conjunctive; thus, all three prongs must be satisfied for a worker to be considered an independent contractor." East Bay Drywall, LLC v. Dep't of Labor and Workforce Dev., 251 N.J. 477, 495 (2022) (emphasis added). The test "becomes applicable only after a determination that the service provided constitutes 'employment,' which is defined as 'service performed for remuneration under any contract of hire, written or oral, express or implied.'" Carpet Remnant Warehouse, Inc. v. N.J. Dep't of Labor, 125 N.J. 567, 581 (1991) (quoting N.J.S.A. 43:21-19(i)(1)(A)).

Prong A, known as the "control test," requires proof "that the provider of services 'has been and will continue to be free from control or direction over the performance of such services.'" Id. at 582 (quoting N.J.S.A. 43:21-19(i)(6)(A)). "The person must establish not only that the employer has not exercised control in fact, but also that the employer has not reserved the right to control the individual's performance." Ibid. "In establishing control for purposes of part A of the test, it is not necessary that the employer control every aspect of the worker's trade; rather, some level of control may be sufficient." Hargrove, 220 N.J. at 305.

Prong B "is satisfied by a showing either that the services performed are outside the employer's usual course of business or that the service is performed outside of all of the employer's place of business." Carpet Remnant, 125 N.J. at 584 (citing N.J.S.A. 43:21-19(i)(6)(B)).

Lastly, Prong C requires "a person be customarily engaged in an independently-established trade, occupation, profession, or business . . . ." Id. at 585. "[I]f the person providing services is dependent on the employer, and on termination of that relationship would join the ranks of the unemployed, the C standard is not satisfied." Id. at 585-86.

The trial court reasonably classified plaintiff as an employee of defendant, rather than an independent contractor, under the ABC test. The court only reached prong A of the test because, as the court found, defendant "clearly" exerted economic control over plaintiff and thus employed him.

The record substantiates that plaintiff and the other barbers were dependent on defendant, who hired apparently undocumented individuals[2] from the Dominican Republic who lacked cosmetology licenses, brought them to the

_____

[2] We do not pass upon the legality of the employment under immigration laws, as that is beyond the scope of this litigation. Serrano v. Underground Utils. Corp., 407 N.J. Super. 253, 269-72 (App. Div. 2009); see also Crespo v. Evergo Corp., 366 N.J. Super. 391, 399 (App. Div. 2004).

United States, and rented them housing. As the trial court found, that business model rendered the barbers dependent on De La Rosa for both income and housing and limited their ability to transfer to other employers.

Additional substantial credible evidence supports the trial court's decision. For instance, although defendant asserted at trial that his barbers set their own hours,[3] plaintiff testified to the contrary. Plaintiff presented corroborating testimony from another barber from the shop, who testified that he worked for defendant until he was terminated for requesting to work six days per week instead of seven. Two other barbers testified for defendant that they set their own hours, but the trial court discredited the testimony of one of them because he and defendant were childhood friends and have an ongoing employment relationship.

Defendant alleged the barbers had freedom to schedule their own clients and supply their own materials, but the trial court found he nevertheless controlled his barbers by intentionally recruiting them in a manner that would

---

[3] The trial court found defendant incredible based on what the court described as his "evasive" testimony about such topics as the ownership of his LLC and the shop's compliance with applicable tax, licensing, and other state and federal regulations. The court made no explicit findings about the credibility of plaintiff's testimony, but implicitly credited aspects of it in its factual findings largely adopting plaintiff's narrative.

A-0686-22

reduce their likelihood of leaving the shop if they ever objected to working conditions.

The fact that plaintiff, as he admitted, occasionally worked for another barber shop to cover shifts for a friend does not negate the court's finding of defendant's control. Control under prong A of the ABC test does not require "control [of] every facet of a person's responsibilities," incomplete control or a "reserv[ation of] the right to control the individual's performance" can be sufficient. Carpet Remnant, 125 N.J. at 582-83.

Apart from this main substantive point, none of defendant's other arguments on appeal compel reversal. We offer the following brief comments.

The trial court did not improperly shift the burden of proof under the ABC test or the computation of wages to the employer. We note in this regard that a provision within the WHL, N.J.S.A. 34:11-4.3, imposes an obligation on the employer to estimate and pay the owed wages at the time of an employee's termination. In any event, the record contains sufficient grounds for the court to have ruled in plaintiff's favor, regardless of which side bore the evidentiary burden.

We are satisfied the trial court's method of calculating the unpaid wages was reasonable. When, as here, precise records of unpaid wages are not

8

available, "'a reasonable approximation of all wages due' shall be paid until the exact amounts due can be computed." Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 395-96 (App. Div. 1999) (citing the WHL formula for payments due to employees on termination of employment, specified at N.J.S.A. 34:11-4.3). The trial court rationally extrapolated from what it deemed to be credible testimony to estimate the hours worked, the imputed hourly rate, the duration of the employment, and so on. As it turned out, the computation of total wages due exceeded the $15,000 jurisdictional limit, so defendant received the monetary benefit of that limitation.

The denial of a directed verdict after the completion of plaintiff's case-in-chief comported with Rule 4:37-2(b). Such a motion should be granted only if "upon the facts and upon the law the plaintiff has shown no right to relief." Conversely, "such [a] motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid.; see also Verdicchio v. Ricca, 179 N.J. 1, 30 (2004). Here, the testimony presented by plaintiff, viewed as it must be in the light most favorable to his side, was sufficient to justify the midtrial motion's denial.

Defendant's argument that the court should have sanctioned plaintiff for bringing an allegedly frivolous lawsuit is unavailing for both procedural and

9

substantive reasons. Procedurally, defendant's sanctions demand fails because there is no proof in the record of a "safe harbor" letter served before trial in compliance with Rule 1:4-8(b)(1). Second, defendant is not the prevailing party.

Lastly, we discern no reason to overturn the judgment based on defendant's claims of bias. Although the trial court was stern at times—in a manifest effort to move this four-day bench trial along efficiently—the record shows that the court several times was also stern with plaintiff. In particular, the court excluded several items of evidence proffered by plaintiff and also curtailed his cross-examination of defendant on certain subjects. The court was coping with the challenges of an interpreter and a pro se plaintiff, at times proceeding in a remote format. The court was further attempting to develop the facts in an orderly manner through its own questions at times, as is its prerogative under N.J.R.E. 614(b).

To the extent we have not otherwise addressed them, all other arguments raised by defendant on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10

A-0686-22