**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3071-16T4

FELIX PEREZ, KARINA
MARROQUIN, MARIA
BARAHONE, ESPERANZA
BARAHONE, GABRIELLA
HERNANDEZ, and GRACIE
Y. RIVERA,

      Plaintiffs-Appellants,

v.

ACCESS BIO, INC.,

      Defendant-Respondent,

and

OLYMPUS MANAGEMENT
SERVICES (f/k/a ATLANTIS
PERSONNEL, INC. and AM
PROFESSIONAL SERVICES, INC.),

      Defendants.

_____

Argued September 21, 2018 – Decided July 23, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5761-12.

Ravi Sattiraju argued the cause for appellants (The Sattiraju Law Firm, PC, attorneys; Ravi Sattiraju, of counsel and on the brief; Anthony S. Almeida and Carole L. Nowicki, on the brief).

Micala Campbell Robinson argued the cause for respondent (Greenberg Traurig, LLP, attorneys; Jason H. Kislin and Micala Campbell Robinson, of counsel and on the brief).

PER CURIAM

Plaintiffs Felix Perez, Karina Marroquin, Maria Barahone, Esperanza Barahone, Gabriella Hernandez, and Gracie Y. Rivera appeal from the October 24, 2014 order of the Law Division denying in part their request for class certification of their claims of violations of the New Jersey Wage and Hour Law (WHL) N.J.S.A. 34:11-56a to -56a38, and the New Jersey Wage Payment Law (WPL) N.J.S.A. 34:11-4.1 to -4.14, as well as the trial court's February 6, 2015 order granting summary judgment in favor of defendant Access Bio, Inc. (Access Bio), and its March 20, 2015 and December 12, 2016 orders denying their motions for reconsideration.  We affirm.

I.

The following facts are derived from the exhibits and certifications submitted with respect to the summary judgment motions.  Access Bio

manufactures diagnostic medical tests at its Somerset facility. On January 1, 2012, it entered into a staffing agreement with defendant Atlantis Personnel Inc., a/k/a AM Professional Services, Inc., a staffing agency, to provide temporary staffing services to Access Bio. Defendant Olympus Management Services is the successor in interest to Atlantis Personnel (collectively, the Agency Defendants).

Pursuant to the agreement, it was the Agency Defendants' responsibility to recruit, screen, interview, and assign its employees (the Assigned Personnel) to work at Access Bio's facility. The agreement provided that

> Assigned Personnel are employees of [the Agency Defendants] and are not employees of [Access Bio] at any time or for any purpose . . . . [The Agency Defendants] will comply with all applicable laws concerning the employment of Assigned Personnel and shall be solely responsible for all compensation and benefits that may be due to Assigned Personnel, including, without limitation, regular pay, overtime, worker's compensation, vacation, sick time, disability, pension and any other compensation or benefits that such individuals may be owed under any applicable law[.]

The Agency Defendants were also responsible for processing the necessary tax and employment eligibility forms for the Assigned Personnel.

The Agency Defendants retained the contractual right to assign their employees to the Access Bio facility or the worksite of any other client. The

3

Agency Defendants were responsible for paying the Assigned Personnel, including overtime, making withholdings from their paychecks for income taxes, unemployment, and workers' compensation, and providing them benefits, holidays, sick time, and vacation days.

Access Bio, on the other hand, was responsible for supplying safe working conditions to the Assigned Personnel, advising them of safety procedures, and instructing them on the services they were performing. Absences of Assigned Personnel were reported by Access Bio to the Agency Defendants. The contract provided Access Bio with the right to "end the assignment for the Assigned Personnel immediately upon notice of dissatisfaction and without any penalty or additional fees or costs." However, individual Assigned Personnel were not provided feedback regarding their performance directly from Access Bio. All such communications were made by Access Bio to the Agency Defendants.

Access Bio informed the Agency Defendants of the number of hours needed to be staffed at its facility. The Agency Defendants maintained the records for all hours worked by the Assigned Personnel, including lunch and break times, and would send Access Bio an invoice on a weekly basis for regular hours and overtime hours worked by Assigned Personnel. Access Bio entered

into a substantially similar agreement with defendant Olympus Management Services on January 6, 2014.

For several years beginning in 2010, plaintiffs were employed by the Agency Defendants and assigned to work at the Access Bio facility. They performed various tasks, including but not limited to: cleaning, removing trash, moving materials, assembling, working on the production line, manual counting, and packing medical devices in plastic. Idania Caseres, an Agency Defendants employee, supervised plaintiffs at Access Bio's facility. Access Bio employees instructed Caseres daily with respect to the tasks to be performed by plaintiffs, many of whom spoke only Spanish. Caseres, who is bilingual, translated the instructions for plaintiffs. Caseres performed the same function when plaintiffs were trained.

The Agency Defendants offered plaintiffs what the Agency Defendants alleged was optional transportation from the Agency Defendants' office to the Access Bio facility, and from the facility to the employees' homes, for forty dollars a week, deducted directly from their paychecks. Plaintiffs, on the other hand, allege that they were compelled to use the Agency Defendants' transportation and were penalized with unpaid holidays or fewer assigned hours if they elected to use their own transportation to the Access Bio facility.

A-3071-16T4

In 2012, the New Jersey Department of Labor and Workforce Development (DOL) audited the Agency Defendants' wage and payment practices. The DOL concluded that the Agency Defendants were the Assigned Personnel's employers and had underpaid the Assigned Personnel $164,333.32 in overtime wages in violation of the WHL and WPL. The DOL awarded plaintiffs the following amounts from the Agency Defendants: Perez, $1,131.39; Marroquin, $467; Maria Barahone, $1,027.73; Esperanza Barahone, $753.08; Hernandez, $885.68; and Rivera, $933.19. Some plaintiffs refused to accept their checks for back wages.[1] In addition, the DOL imposed a $351,000 penalty on the Agency Defendants.

Plaintiffs filed a putative class action complaint in the Law Division against Access Bio and the Agency Defendants, alleging violations of the WHL and WPL. Plaintiffs alleged that they, and all similarly situated persons, were: (1) incorrectly categorized as employees of only the Agency Defendants and not of both the Agency Defendants and Access Bio; (2) forced to take the Agency Defendants' transportation to and from the Access Bio facility, the cost of which was improperly withheld from their paychecks; (3) not compensated for their

---

[1] Marroquin rejected her check because she did not know what it was. Esperanza Barahone rejected her check because she thought the amount was wrong. Perez also rejected his check.

time waiting for the mandatory transportation to and from the Access Bio facility; and (4) denied overtime pay.

On October 24, 2014, the trial court entered an order denying class certification as to plaintiffs' overtime claims because 345 out of 351 potential class members were made whole by the administrative efforts of the DOL, negating the numerosity requirement of Rule 4:32-1. The court granted class certification as to plaintiffs' claims related to compelled transportation.

On December 11, 2014, Access Bio moved for summary judgment in its favor on all claims. Access Bio noted that the WPL "governs the time and mode of payment of wages due to employees[,]" Hargrove v. Sleepy's, LLC., 220 N.J. 289, 302 (2015), "[t]he WHL is designed to 'protect employees from unfair wages and excessive hours[,]'" Id. at 304 (quoting In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009)), and that both statutes apply only where an employer-employee relationship exists. Access Bio argued that it was entitled to summary judgment because it was not plaintiffs' joint employer along with the Agency Defendants, and therefore, not liable for the claims alleged by plaintiffs under either statute.

During oral argument, plaintiffs' counsel conceded that the appropriate test to determine the joint employment status of Access Bio is set forth in In re

7

Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig., 683 F.3d 462 (3d Cir. 2012). The trial court agreed. After applying the Enterprise test, the court concluded that the Agency Defendants were plaintiffs' sole employers. The court found the "record is clear that it was [the Agency Defendants] who interviewed [plaintiffs], who hired them, set rates of pay, . . . [and] made sure that there [were] all the tax forms, the I-9, W-2's," and that Access Bio had "absolutely nothing to do with that." The court concluded that "under the facts of this case, there is no way . . . that Access Bio could prevent violations of either" the WHL or the WPL relating to plaintiffs. Thus, on February 6, 2015, the court entered an order granting summary judgment to Access Bio and dismissing all claims against it.

Plaintiffs thereafter moved for reconsideration of the February 6, 2015 order. It is not clear from the record the basis of plaintiffs' motion. However, it is undisputed that plaintiffs did not argue that the trial court applied the improper test to decide whether Access Bio was their joint employer. On March 20, 2015, plaintiffs' first motion for reconsideration was denied.

On April 8, 2016, plaintiffs filed a second motion for reconsideration of the February 6, 2015 order and also moved for summary judgment in their favor. In their moving papers, plaintiffs argued that the Enterprise test did not control

the analysis of whether Access Bio was their joint employer. Rather, they argued that Access Bio's status as a joint employer is properly determined using the ABC test discussed in Hargrove.[2]

After granting Access Bio's request to sever the two motions, the trial court, on December 12, 2016, issued an oral opinion denying plaintiffs' second reconsideration motion. The court noted that when plaintiffs conceded that the holding in Enterprise controlled the joint employer analysis, the Court's opinion in Hargrove had long since been issued. It was not, therefore, new law

---

[2] Under the "ABC" test an individual is presumed to be an employee unless the employer can make certain showings regarding the individual's service, including:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
>
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.
>
> [N.J.S.A. 43:21-19(i)(6).]

warranting reconsideration.  Nevertheless, the trial court addressed the merits of their argument that Hargrove applied to their claims against Access Bio.  The court concluded that the "crux of the [Hargrove] case is whether these people were independent contractors or were they – employees."  Noting that plaintiffs did not allege they were incorrectly labeled as independent contractors, the trial court concluded that Hargrove and the ABC test do not apply here.  As a result, the trial court upheld its original decision and entered an order denying plaintiffs' second motion for reconsideration.

The trial court's denial of plaintiffs' second motion for reconsideration left Access Bio as a dismissed party, mooting plaintiffs' motion for summary judgment.  The court, therefore, did not decide that motion.[3]

On January 25, 2017, plaintiffs filed a stipulation of dismissal without prejudice of all claims alleged against the Agency Defendants.  At plaintiffs' request, on March 3, 2017, the court entered a final judgment.

This appeal followed.  Plaintiffs argue: (1) the trial court erred in granting summary judgment to Access Bio because it applied the Enterprise test to

---

[3] In addition, plaintiffs' summary judgment motion was based on its argument that the holding in Hargrove controlled the determination of whether Access Bio was plaintiffs' joint employer.  As noted above, the trial court rejected this argument when denying plaintiffs' motion for reconsideration.

determine if Access Bio was plaintiffs' joint employer when the test set forth in Hargrove controls; and (2) assuming that Hargrove does not control, the trial court erred in concluding as a matter of law that Access Bio was not a joint employer of plaintiffs under the Enterprise test. In its opposition brief, Access Bio argues that plaintiffs manufactured appellate jurisdiction to review interlocutory orders of the trial court by dismissing their claims against the Agency Defendants without prejudice.

## II.

We first address Access Bio's claim that plaintiffs manufactured appellate jurisdiction to secure appellate review of interlocutory orders without being granted leave to appeal. Access Bio asserts that the orders on appeal did not dispose of all claims against all parties and that since the dismissal by stipulation of the Agency Defendants was without prejudice, the March 3, 2017 final judgment was a circumvention of the requirement to obtain leave to file an appeal. We disagree.

"[F]inality is a jurisdictional prerequisite for appeal[.]" Ricci v. Ricci, 448 N.J. Super. 546, 566 (App. Div. 2017). It is "well settled that a judgment, in order to be eligible for appeal as a final judgment, must be final as to all parties and all issues." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.2

11

on R. 2:2-3 (2019); see Silviera-Francisco v. Bd. of Educ., 224 N.J. 126, 136 (2016). "By definition, an order that does not finally determine a cause of action but only decides some intervening matter pertaining to the cause[,] and which requires further steps . . . to enable the court to adjudicate the cause on the merits[,] is interlocutory." Ricci, 448 N.J. Super. at 565 (alterations in original) (quoting Moon v. Warren Haven Nursing Home, 182 N.J. 507, 512 (2005)).

"A dismissal without prejudice, however, absent a specific vacation provision, is generally appealable." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.4 on R. 2:2-3 (2019). On the other hand, "a dismissal without prejudice of either an issue or a party . . . with the contemplation of commencement of a subsequent action and entered for the purpose of rendering an otherwise interlocutory order appealable will preclude the finality. . . ." Ibid. "A conditional dismissal in these terms creates only the illusion of finality" and "violates the spirit and intent of the court rules[.]" Ruscki v. City of Bayonne, 356 N.J. Super. 166, 168-69 (App. Div. 2002).

Plaintiffs entered into a voluntary dismissal with the Agency Defendants pursuant to Rule 4:37-1(a) which allows an action to be dismissed "by filing a stipulation of dismissal specifying the claim or claims being dismissed, signed by all parties who have appeared in the action." Rule 4:37-1(a) does not contain

a specific vacation provision, and therefore the fact that the stipulation was entered without prejudice does not alter its finality regarding the claims against the Agency Defendants. Further, neither the stipulation nor the final judgment contained a reinstatement provision, and plaintiffs represented to this court in their Civil Case Information Statement that the "[t]he claims against Defendants AM Professional Services, Inc. and Atlantis Personnel, Inc. were dismissed by Stipulation of Dismissal," and "will not be reopened or otherwise relitigated." We therefore conclude that we have jurisdiction over plaintiffs' appeal.

We review the trial court's decision granting summary judgment to Access Bio de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J.

Super. at 167 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529-30 (1995)).

Self-serving assertions, unsupported by evidence, "[are] insufficient to create a genuine issue of material fact." Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015) (alteration in original) (quoting Heyert v. Taddese, 431 N.J. Super 388, 414 (App. Div. 2013)). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523.

The trial court entered summary judgment by applying the test set forth in Enterprise to determine whether a genuine issue of material fact existed with respect to whether Access Bio was plaintiffs' joint employer. Plaintiffs acquiesced in the court's application of the Enterprise test.

"[C]oncessions made during a summary judgment motion foreclose a contrary argument on appeal." Sullivan v. Port Auth. of N.Y. & N.J., 449 N.J. Super. 276, 281 (App. Div. 2017); see also Ji v. Palmer, 333 N.J. Super. 451,

14

459 (App. Div. 2000). Here, plaintiffs conceded at oral argument that the holding in Enterprise controlled the analysis of whether Access Bio was their joint employer. Plaintiffs did not raise the argument that Hargrove was controlling until their second motion for reconsideration, filed over a year and two months after Hargrove was decided. Plaintiffs offered no explanation for the concession or for the delay in raising the argument that Hargrove controlled. Plaintiffs are, therefore foreclosed from relying on the test established in Hargrove to challenge the trial court's summary judgment order or its denial of their reconsideration motion.

Moreover, for the sake of completeness, we note that plaintiffs' reliance on Hargrove is misplaced. In Hargrove, the plaintiffs were truck drivers who delivered mattresses for Sleepy's, LLC. They alleged that they were employees of Sleepy's but were misclassified as independent contractors, which resulted in the loss of their statutory rights with respect to their wages and hours. Hargrove, 220 N.J. at 295-96. Hargrove came before the Court in response to "a question of law certified and submitted by the United States Court of Appeals for the Third Circuit pursuant to Rule 2:12A-1." Id. at 295. In Hargrove, the Third Circuit asked the Court "[u]nder New Jersey law, which test should a court apply to determine a plaintiff's employment status for purposes of the [WPL] and

[WHL]?" Id. at 296 (citations omitted). The Court described "[t]he fundamental question presented to the Court [as] which test should be applied to determine, under the WHL and WPL, whether a given individual is an employee or an independent contractor who performs services for remuneration for an individual or a business concern." Id. at 312.

In its analysis, the Court noted that a regulation adopted pursuant to the WHL uses "criteria identified in the Unemployment Compensation Law to distinguish between an employee and independent contractor[.]" Id. at 301. Those criteria are the ABC test. See N.J.S.A. 43:21-19(i)(6)(A), (B), and (C). This is indicative of the Court's narrow focus on the classification of employees versus independent contractors and for not all employment disputes. Ultimately, the Court held "that the 'ABC' test . . . governs whether a plaintiff is an employee or independent contractor for purposes of resolving a wage-payment or wage-and-hour claim." Hargrove, 220 N.J. at 295. Therefore, contrary to plaintiffs' arguments, the Court did not make its holding in Hargrove applicable to all employment status disputes under the WHL and WPL, but rather focused on the distinction between an employee and an independent contractor.

By contrast, in Enterprise, the question before the court was whether an entity was a joint employer of its subsidiaries' assistant manager. The Third

Circuit stated that it had to "identify the appropriate test to determine whether a defendant is a plaintiff's joint employer" to resolve the appeal. Enterprise, 683 F.3d at 467. The court held that a "determination of joint employment 'must be based on a consideration of the total employment situation and the economic realities of the work relationship.'" Id. at 469 (quoting Bonnett v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (4th Cir. 1983)). Ultimately, the court set up a fact-sensitive analysis that looks at

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.
>
> [Ibid.]

However, it observed that "[i]f a court concludes that other indicia of 'significant control' are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth." Id. at 470.

The Agency Defendants never denied that they were plaintiffs' employer, nor did plaintiffs argue that they were incorrectly treated as independent

17

contractors. Therefore, the question to be resolved in this case is whether or not Access Bio was a joint employer in addition to the Agency Defendants. We agree with the trial court that this inquiry is not controlled by Hargrove, but is best decided using the joint employer test set forth in Enterprise.

Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence[,]" or (3) the moving party is presenting "new or additional information . . . which it could not have provided

A-3071-16T4

on the first application[.]" Cummings, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401. A motion for reconsideration is not an opportunity to "expand the record and reargue a motion." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

Plaintiffs' argument that the trial court applied an incorrect legal standard to determine whether Access Bio was plaintiffs' joint employer is without merit. Reconsideration of the trial court's order granting summary judgment to Access Bio, therefore, was correctly denied.

In addition, after reviewing the record, we are convinced that the trial court's grant of summary judgment in favor of Access Bio is well supported. Access Bio did not have the authority to hire or fire plaintiffs and had no control over the amount and method of their compensation, benefits, and withholdings for taxes, workers' compensation, and unemployment. We agree with the trial court that the fact that Access Bio employees instructed Caseres on daily tasks to be performed by plaintiffs does not rise to the level of control necessary to be

A-3071-16T4

an employer. It is instead indicative of Access Bio attempting to ensure that the work performed by plaintiffs at its facility was done correctly and safely. The record contains no evidence on which a reasonable finder of fact could conclude that Access Bio had control over plaintiffs sufficient to be their joint employer.

We therefore affirm the trial court's February 6, 2015 order granting summary judgment to Access Bio on all claims, and its December 12, 2016 order denying plaintiffs' motions for reconsideration. In light of our decision affirming the trial court's conclusion that Access Bio was not plaintiffs' joint employer, plaintiffs' appeal of the trial court's October 24, 2014 order denying in part their motion for class certification is moot.[4]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Although plaintiffs' notice of appeal lists the March 20, 2015 order denying their first motion for reconsideration, they do not address the substantive basis for their first motion for reconsideration in their briefs. We therefore deem any arguments with respect to the March 20, 2015 order waived. "[A]n issue not briefed is deemed waived." Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019); Telebright Corp. v. Dir., N.J. Div. of Taxation, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief).

A-3071-16T4