SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## James Kennedy, II v. Weichert Co. (A-48/49-22) (087975)

**Argued November 8, 2023 -- Decided May 13, 2024**

**PATTERSON, J., writing for a unanimous Court.**

The Court considers whether an agreement between a real estate broker and a real estate salesperson identifying the salesperson as an independent contractor excludes the salesperson from the Wage Payment Law (WPL), a statute that governs compensation paid to employees but does not apply to independent contractors.

Plaintiff James Kennedy, II, a real estate salesperson, entered into two written agreements to affiliate as an independent contractor with defendant Weichert Co. (Weichert), a real estate broker. After working as a Weichert salesperson from 2012 to 2018, Kennedy filed this putative class action, alleging that Weichert violated the WPL by misclassifying him and other real estate salespersons as independent contractors and unlawfully deducting fees and expenses from their commissions.

The trial court denied Weichert's motion to dismiss Kennedy's complaint for failure to state a claim, ruling that the question of Kennedy's status was not determined by the parties' agreement, but by the legal standard that generally governs employee classification issues under the WPL, known as the "ABC" test. The Appellate Division affirmed as modified, concluding that the 2018 amendments to the New Jersey Real Estate License Act, commonly known as the Brokers Act, authorized real estate brokers and salespersons to enter into independent contractor relationships, but that those amendments applied prospectively and thus governed only a brief portion of Kennedy's claim.

The Court granted leave to appeal but then remanded to the Appellate Division when, in 2022, the Legislature further amended the Brokers Act, providing in part that the 2018 amendments apply retroactively. On remand, the Appellate Division again affirmed, holding that the ABC test does not apply to real estate broker-salespersons or salespersons but that the parties' contractual election of a business affiliation was a relevant but not dispositive factor in an employment status determination. 474 N.J. Super. 541, 551-59 (App. Div. 2023). The Court granted Weichert's motion for leave to appeal, 254 N.J. 173 (2023), and Kennedy's cross-motion for leave to appeal, 254 N.J. 178 (2023).

1

**HELD:** The parties' agreement to enter into an independent contractor business affiliation is enforceable under N.J.S.A. 45:15-3.2, and Kennedy, as an independent contractor, was not subject to the WPL pursuant to N.J.S.A. 34:11-4.1(b). The trial court therefore erred when it denied Weichert's motion to dismiss the complaint.

1. The Legislature enacted the Brokers Act in 1921 in part to define, regulate, and license real estate brokers and salesmen. The Brokers Act has since been amended and has been the subject of regulations promulgated by the Real Estate Commission. From 1993 until the 2018 amendments to the Brokers Act, the statute defined a "real estate salesperson" as a "person who . . . is employed by and operates under the supervision of a licensed real estate broker" to conduct real estate activities enumerated in the statute. N.J.S.A. 45:15-3 (2017). (pp. 14-16)

2. The WPL prohibits employers from withholding or diverting any portion of an employee's wages unless the employer is required or empowered to do so by law or for purposes enumerated in the statute. The WPL provides that "independent contractors and subcontractors shall not be considered employees," but it prescribes no statutory standard for a court to determine whether a person is an employee or an independent contractor. N.J.S.A. 34:11-4.1(b). In Hargrove v. Sleepy's, LLC, the Court adopted the ABC test for determining whether a person is an employee or an independent contractor under the WPL. 220 N.J. 289, 312-16 (2015). (pp. 16-18)

3. In the wake of Hargrove, the Real Estate Commission adopted regulations, effective in July 2017, to make clear that a real estate broker and a real estate salesperson may elect a business affiliation in which the salesperson is an independent contractor, not an employee. In August 2018, the Legislature amended the Brokers Act accordingly. Most significantly, the Legislature added a new section, N.J.S.A. 45:15-3.2, providing that "[n]otwithstanding any provision of [the Broker's Act] or any other law, rule, or regulation to the contrary, a business affiliation between a broker and a broker-salesperson or salesperson may be that of an employment relationship or . . . an independent contractor" and that "[t]he nature of the business affiliation shall be defined in [a] written agreement." (pp. 18-21)

4. After the Appellate Division's first decision in this matter, the Legislature passed a bill to further amend the Brokers Act. The Court reviews the legislative history of the bill, including the deletion of language about which Governor Philip D. Murphy expressed concern that it could be invoked by employers in other industries in an attempt to misclassify employees. With regard to the real estate industry, the 2022 amendments, as enacted, provided that N.J.S.A. 45:15-3.2 "shall apply retroactively to enforce but not change any written agreement between a broker-salesperson or salesperson and a broker" under which "the broker-salesperson or salesperson is or was [identified as] an independent contractor." (pp. 21-24)

2

5.  The plain language of the Brokers Act addresses whether Kennedy may assert a claim under the WPL.  The Legislature's use of the word "notwithstanding" in N.J.S.A. 45:15-3.2 is significant:  the Legislature clearly intended that -- in the real estate setting in which the Brokers Act applies -- the parties' business affiliation agreement will prevail, even if it conflicts with a law, rule, or regulation.  That legislative intent is underscored by the 2022 amendments and their history.  Under the Brokers Act, the parties' agreement to an independent contractor affiliation pursuant to N.J.S.A. 45:15-3.2 is not merely one of several factors in the analysis; rather, that agreement is dispositive and a court must enforce its terms.  (pp. 24-27)

6.  Kennedy, who agreed in writing to affiliate with Weichert as an independent contractor, must accordingly be treated as an independent contractor "notwithstanding . . . any other law, rule, or regulation to the contrary," including the WPL.  The written agreement is dispositive, and Kennedy was not subject to the ABC test or to any other classification standard.  Because he was an independent contractor when he was affiliated with Weichert, Kennedy was not covered by the WPL and therefore cannot assert the claim set forth in his complaint, a misclassification claim premised on the WPL.  (pp. 27-28)

**REVERSED and REMANDED for the dismissal of Kennedy's complaint.**

**CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PATTERSON's opinion.**

3

James Kennedy, II,
on behalf of himself and all
other similarly situated persons,

Plaintiff-Appellant/Cross-Respondent,

v.

Weichert Co., d/b/a
Weichert Realtors,

Defendant-Respondent/Cross-Appellant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
474 N.J. Super. 541 (App. Div. 2023).

| Argued | Decided |
| --- | --- |
| November 8, 2023 | May 13, 2024 |

Ravi Sattiraju argued the cause for appellant/cross-respondent (Sattiraju & Tharney, attorneys; Ravi Sattiraju, of counsel and on the briefs, and Brendan P. McCarthy, on the briefs).

John F. Birmingham (Foley & Lardner) of the Michigan bar, admitted pro hac vice, argued the cause for respondent/cross-appellant (Laddey, Clark & Ryan, and Foley & Lardner, attorneys; Thomas N. Ryan, John F. Birmingham, and Jennifer M. Keas (Foley & Lardner) of the District of Columbia bar, admitted pro hac vice, on the briefs).

Mayur P. Saxena, Assistant Attorney General, argued the cause for amicus curiae New Jersey Department of Labor and Workforce Development (Matthew J. Platkin, Attorney General, attorney; Jeremy Feigenbaum, Solicitor General, and Mayur P. Saxena, of counsel, and Marcus Mitchell and Eve Weissman, Deputy Attorneys General, on the brief).

Barry S. Goodman argued the cause for amicus curiae New Jersey Realtors (Greenbaum, Rowe, Smith & Davis, attorneys; Barry S. Goodman, of counsel and on the brief, and Conor J. Hennessey, on the brief).

---

JUSTICE PATTERSON delivered the opinion of the Court.

---

The New Jersey Real Estate License Act, commonly known as the Brokers Act, N.J.S.A. 45:15-1 to -29.5, governs the business activities of real estate brokers, real estate broker-salespersons, and real estate salespersons. Since a 2018 amendment, the Brokers Act has authorized real estate brokers to affiliate by written agreement with real estate broker-salespersons or salespersons either as employer and employee or in an independent contractor relationship, "[n]otwithstanding any provision of [the Brokers Act] or any other law, rule, or regulation to the contrary." N.J.S.A. 45:15-3.2(b).

In this appeal, we must determine whether an agreement between a real estate broker and a real estate salesperson identifying the salesperson as an independent contractor excludes the salesperson from the Wage Payment Law

2

(WPL), N.J.S.A. 34:11-4.1 to -4.15, a statute that governs compensation paid to employees but does not apply to independent contractors.

Plaintiff James Kennedy, II, a real estate salesperson, entered into two written agreements with defendant Weichert Co. (Weichert) in which he agreed to affiliate with Weichert as an independent contractor. After working for six years as a Weichert salesperson, Kennedy filed this putative class action, alleging that Weichert violated the WPL by misclassifying him and other real estate salespersons as independent contractors and unlawfully deducting marketing fees and other expenses from their commissions.

Weichert moved to dismiss Kennedy's complaint for failure to state a claim pursuant to Rule 4:6-2(e). It argued that its agreement with Kennedy, which provided that Kennedy would work as an independent contractor, was enforceable under the Brokers Act as amended in 2018. The trial court denied Weichert's motion, ruling that the question of Kennedy's status was not determined by the parties' agreement, but by the legal standard that generally governs employee classification issues under the WPL.

Weichert appealed, and the Appellate Division affirmed as modified the trial court's decision. The appellate court agreed with Weichert that the 2018 amendments to the Brokers Act authorized real estate brokers and real estate salespersons to enter into independent contractor relationships. It ruled,

3

however, that the 2018 amendments applied only prospectively to contracts executed after the amendments' effective date and that those amendments governed only a brief portion of the time period relevant to Kennedy's claim.

After we granted the parties' cross-motions for leave to appeal, the Senate and General Assembly passed a bill further amending the Brokers Act. A. 6206. The bill provided in part that the 2018 amendments would apply retroactively to contracts between real estate brokers and real estate salespersons that were executed prior to the bill's effective date. Ibid.

Governor Philip D. Murphy conditionally vetoed the bill approved by the Senate and General Assembly. Governor's Veto Statement to A. 6206 (Jan. 10, 2022). The Governor concurred with the Legislature's retroactive application of the 2018 amendments enforcing agreements to independent contractor business affiliations in the real estate field, but he recommended deleting the language that the Legislature proposed because of concerns that employers in other industries might invoke that language in an attempt to misclassify employees. Ibid. The Governor instead recommended new language confirming that the provision addressing business affiliations added to the Brokers Act in the 2018 amendments would "apply retroactively to enforce but not change" any written agreement between a broker-salesperson or salesperson and a broker providing that the broker-salesperson or

4

salesperson was an independent contractor.  Ibid.  The Legislature accepted the Governor's changes to the bill, and the 2022 amendments were enacted.  See L. 2021, c. 486.

We remanded the matter to the Appellate Division to consider the impact of the 2022 amendments to the Brokers Act on this appeal.  The Appellate Division again affirmed the trial court's denial of Weichert's motion to dismiss.  Kennedy v. Weichert Co., 474 N.J. Super. 541, 551-57 (App. Div. 2023).  The appellate court held that the test that generally governs classification disputes under the WPL does not apply to real estate broker-salespersons or salespersons.  Ibid.  It viewed the parties' contractual election of a business affiliation to be a relevant but not dispositive factor in an employment status determination under the WPL.  Id. at 559.

We granted the parties' cross-motions for leave to appeal, and now reverse.  We hold that the parties' agreement to enter into an independent contractor business affiliation is enforceable under N.J.S.A. 45:15-3.2 and that Kennedy, as an independent contractor, was not subject to the WPL pursuant to N.J.S.A. 34:11-4.1(b).  We remand this matter for the dismissal of Kennedy's complaint.

## I.

### A.

Weichert is a real estate broker operating offices throughout New Jersey. Kennedy, a licensed real estate salesperson, worked for Weichert from 2012 to 2018, based at its Howell real estate office. It is undisputed that the parties agreed in writing that Kennedy would work as a Weichert salesperson in the capacity of an independent contractor, not as an employee.[1]

On November 6, 2018, the contract between Kennedy and Weichert was terminated. The record does not indicate which party terminated the contract or the reason for the termination.

### B.

### 1.

On March 25, 2019, Kennedy filed this action on his own behalf and on behalf of a putative class defined as "[a]ll individuals that contracted as a 'real estate salesperson' with Defendant Weichert Co. within the State of New

---

[1] Neither Kennedy nor Weichert submitted their written agreements to the trial court. At the Appellate Division's request, counsel for Weichert submitted to the court two agreements executed by Kennedy and Weichert: an agreement entitled "Independent Contractor Agreement Between Broker and Salesperson" dated August 8, 2012, and an agreement entitled "Addendum to Independent Contractor Agreement between Broker and Salesperson" dated June 8, 2017. Both agreements provide, among other terms, that Kennedy would act as an independent contractor, and that he would be compensated by commission.

Jersey from March 25, 2013 through to the present." He alleged that notwithstanding the Weichert salespersons' agreement to work as independent contractors, salespersons should be deemed "employees" pursuant to the "ABC" test that we adopted as the governing standard for WPL classification disputes in Hargrove v. Sleepy's, LLC, 220 N.J. 289, 312-16 (2015). Kennedy asserted that Weichert misclassified the real estate salespersons as independent contractors in order to circumvent the WPL's requirements. He alleged that Weichert violated the WPL by deducting money from the salespersons' commissions and requiring that salespersons pay certain expenses. Kennedy sought compensatory damages, injunctive relief, attorneys' fees, and other remedies.

Weichert filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 4:6-2(e).[2] Weichert sought a declaration that the parties' agreement presumptively defines their business affiliation. Asserting that the ABC test is incompatible with the requirements

---

[2] In support of its motion to dismiss, Weichert argued before the trial court and the Appellate Division that because this Court in Hargrove imported the ABC test from a provision of the Unemployment Compensation Law, see N.J.S.A. 43:21-19(i)(6)(A) to (C), real estate salespersons should be exempt from the WPL in light of the UCL's exemption for real estate salespersons compensated entirely by commission, see N.J.S.A. 43:21-19(i)(7)(K). Weichert did not raise that argument before this Court, and we do not consider it.

7

imposed by the Brokers Act on real estate brokers, broker-salespersons, and salespersons, Weichert contended that if the court did not find that the parties' agreement defined their affiliation, it should apply a test other than the ABC test to real estate salespersons.

The trial court found that under <u>Hargrove</u>, 220 N.J. at 312-16, the ABC test governs the WPL claim asserted by Kennedy and the putative class. The court therefore denied Weichert's motion to dismiss.

2.

The Appellate Division granted Weichert's motion for leave to appeal. The appellate court acknowledged that on August 10, 2018, the Legislature had amended the Brokers Act to adopt N.J.S.A. 45:15-3.2, a provision that authorizes real estate brokers and real estate salespersons to enter into independent contractor business affiliations. The Appellate Division declined, however, to retroactively apply the Act as amended to Kennedy's claim based on alleged WPL violations prior to the amendments. It found that for all but the last three months of the time period relevant to Kennedy's claim, the 2018 amendments did not apply, and that the question of Kennedy's classification for that period should therefore be determined under the ABC test.

With respect to the three-month period to which the 2018 amendments to the Brokers Act applied, the Appellate Division declined to assess the impact

8

of those amendments on the claim. It instead affirmed the trial court's denial of Weichert's motion to dismiss and remanded the matter to the trial court to determine, based on a full factual record, the test that should apply to Kennedy's claims for the time period following the 2018 amendments to the Brokers Act.

3.

We granted Weichert's motion for leave to appeal. 249 N.J. 66 (2021). Shortly after we granted leave to appeal, the Legislature enacted the 2022 Amendments to the Brokers Act. L. 2021, c. 486.

We then vacated our grant of leave to appeal and summarily remanded the matter to the Appellate Division so that it could consider, in the first instance, the impact of the 2022 amendments to the Brokers Act on this appeal. 251 N.J. 22 (2022).

4.

On remand, the Appellate Division granted amicus curiae status to the New Jersey Department of Labor and Workforce Development and New Jersey Realtors.

The Appellate Division concluded that by virtue of the requirements imposed on real estate brokers and salespersons by the Brokers Act, the ABC test imposed by Hargrove is "a standard virtually unattainable for real estate

9

salespersons." Kennedy, 474 N.J. Super. at 553-54. The appellate court held that "Hargrove does not apply to WPL claims asserted by fully commissioned real estate salespersons because the Brokers Act forecloses application of the ABC test." Id. at 551.

Nonetheless, the Appellate Division declined to find that the written agreement between a real estate broker and a real estate salesperson is, in and of itself, dispositive with respect to the parties' business affiliation. Id. at 552-58. The Appellate Division cited MacDougall v. Weichert, 144 N.J. 380, 388 (1996), in which we stated that "an individual "may be an employee 'for some purposes but an independent contractor for others.'" Kennedy, 474 N.J. Super. at 557-59 (quoting MacDougall, 144 N.J. at 388). The appellate court concluded that "the written agreement required by [N.J.S.A. 45:15-3.2(a)] is a factor, but not the sole factor, in determining the employment status of a fully commissioned real estate salesperson." Id. at 551. It reasoned that holding that the parties' written contract defines the business relationship would deviate from "decades of precedent that requires us to look beyond the words used in this agreement," a determination it viewed to be "more appropriately the province of our Supreme Court." Id. at 559.

Accordingly, the Appellate Division affirmed as modified the trial court's denial of Weichert's motion to dismiss and remanded the matter to the

trial court for a determination of the appropriate test to define the relationship between a real estate broker and a real estate salesperson. Id. at 561.

5.

We granted Weichert's motion for leave to appeal, 254 N.J. 173 (2023), and Kennedy's cross-motion for leave to appeal, 254 N.J. 178 (2023). The New Jersey Department of Labor and Workforce Development and New Jersey Realtors retained their amicus curiae status.

II.

A.

Kennedy argues that we should reverse the Appellate Division's determination that the ABC test adopted in Hargrove does not govern the question of his employment status for purposes of his WPL claim. He asserts that absent express language in the Brokers Act prescribing an exception to Hargrove for real estate salespersons, the Appellate Division should have held that the ABC test governs misclassification disputes under the WPL that involve real estate salespersons, just as it governs such disputes involving workers in other industries.

B.

Weichert agrees with the Appellate Division's holding that Hargrove does not apply to WPL disputes involving real estate salespersons, given the

11

plain terms of the Brokers Act as amended in 2018 and 2022. It contends, however, that the appellate court deviated from the Legislature's mandate when it declined to enforce the parties' agreement that Kennedy was an independent contractor and instead held that the agreement is only one factor in the misclassification analysis.

## C.

Amicus curiae the New Jersey Department of Labor and Workforce Development argues that the Brokers Act recognizes the business affiliation set forth in the parties' contract to be a relevant but not dispositive factor in determining whether a real estate salesperson is an independent contractor or an employee for purposes of the WPL.

## D.

Amicus curiae New Jersey Realtors argues that the Legislature expressly exempted real estate salespersons from WPL mandates that are incompatible with the Brokers Act and longstanding practice, and that a decision declaring all real estate salespersons to be employees under the WPL would imperil the careers of part-time or less productive salespersons and disrupt the real estate industry.

III.

A.

We review de novo a court's determination of a motion to dismiss for failure to state a claim under Rule 4:6-2(e). W.S. v. Hildreth, 252 N.J. 506, 518 (2023). In that inquiry, we owe no deference to the trial court's legal conclusions. Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). When an appeal involves the interpretation of a statute, we review de novo the court's statutory construction. Hildreth, 252 N.J. at 518-19.

"When courts interpret the meaning of a statute, the paramount goal is 'to determine and give effect to the Legislature's intent.'" Malanga v. Township of West Orange, 253 N.J. 291, 310 (2023) (quoting State v. Lopez-Carrera, 245 N.J. 596, 612 (2021)). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted). We will not "rewrite a plainly written enactment of the Legislature . . . [or] presume that the Legislature intended something other than that expressed by way of the plain language." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)

13

(omission and alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

"If the language of a statute is clear, our task is complete." Malanga, 253 N.J. at 311. "If, however, the plain language of a statute is not clear or if it is susceptible to more than one possible meaning or interpretation," we look to extrinsic secondary sources to aid us in our interpretation, such as "legislative history, statements of the sponsor or sponsors of bills that were enacted, and, where relevant, a Governor's press release, or . . . conditional veto message." Bosland, 197 N.J. at 553-54 (citations omitted); see also L.A. v. DYFS, 217 N.J. 311, 329 (2014) ("A governor's conditional veto message often states with particularity why the changed language is essential for a passed bill to secure the governor's signature and be enacted into law.").

## B.

### 1.

The Legislature enacted the Brokers Act in 1921, seeking in part "to define, regulate and license real estate brokers and salesmen." N.J.S.A. 45:15-5. The Act "is designed to protect the public." Re/Max v. Wausau Ins. Cos., 162 N.J. 282, 287 (2000).

To that end, the Brokers Act imposes licensing and examination mandates on real estate brokers, real estate broker-salespersons (licensed real

14

estate brokers who perform the statutory functions of real estate salespersons), and real estate salespersons. N.J.S.A. 45:15-3, -8 to -9. The Act strictly regulates several aspects of a real estate business. It requires, for example, that a real estate salesperson conduct real estate operations enumerated in the statute "under the supervision of a licensed real estate broker." N.J.S.A. 45:15-3. The salesperson's license "shall be kept by the broker," and must be "prominently displayed" at the broker's main office. N.J.S.A. 45:15-12, -14. A salesperson or broker-salesperson "shall be licensed under a broker" and "cannot be licensed with more than one broker at the same time." N.J.S.A. 45:15-14. In short, the Brokers Act requires that a real estate salesperson affiliate with a broker in order to conduct real estate activities and imposes on that broker significant responsibilities with respect to the salesperson's operations. N.J.S.A. 45:15-3, -12, -14.

The core issue in this appeal -- the business affiliation between a real estate broker and a real estate broker-salesperson or salesperson -- has been addressed by the Legislature in successive amendments to the Brokers Act. It has also been the subject of regulations promulgated by the Real Estate Commission, an entity created to regulate the real estate industry that is now a Division of the Department of Banking and Insurance. See N.J.S.A. 45:15-5.

15

From 1993 until the 2018 amendments to the Brokers Act, the statute defined a "real estate salesperson" as a "person who, for compensation, valuable consideration or commission, or other thing of value, or by reason of a promise or reasonable expectation thereof, is employed by and operates under the supervision of a licensed real estate broker" to conduct real estate transactions and other activities enumerated in the statute. See N.J.S.A. 45:15-3 (2017). Viewing real estate salespersons to be "an integral, but not an independent, part of [real estate brokers'] business activity," we invoked that statutory language, as well as the supervisory requirements imposed on brokers, to find that real estate salespersons constituted employees for purposes of the Workers Compensation Act, N.J.S.A. 34:15-1 to -147. Re/Max, 162 N.J. at 286-88.

In 2015, we decided Hargrove, addressing the standard governing employment misclassification disputes under the WPL. 220 N.J. at 312-16. Among other provisions, the WPL prohibits employers from withholding or diverting "any portion of an employee's wages unless . . . [t]he employer is required or empowered to do so by New Jersey or United States law; or . . . [t]he amounts withheld or diverted are for" purposes enumerated in the statute. N.J.S.A. 34:11-4.4. The WPL defines an "employee" as "any person suffered or permitted to work by an employer, except that independent contractors and

16

subcontractors shall not be considered employees," but it prescribes no statutory standard for a court to determine whether a person is an employee or an independent contractor.  N.J.S.A. 34:11-4.1(b).

Hargrove was an action brought in federal court by truckers hired to deliver the defendant's products to its customers.  220 N.J. at 295-96.  The United States Court of Appeals for the Third Circuit submitted to this Court a certified question, asking that we identify the test to determine an employee's status under the WPL and the Wage and Hour Law (WHL), N.J.S.A. 34:11-4.1 to -68.  Id. at 295.  We considered, among other tests, the ABC test set forth in the Unemployment Compensation Law (UCL), N.J.S.A. 43:21-19(i)(6)(A) to -(C), and adopted by regulation for WHL classification disputes.  Id. at 301.

"The 'ABC' test presumes an individual is an employee unless the employer can make certain showings regarding the individual employed."  Id. at 305.  Those showings include:

> A.  Such individual has been and will continue to be free from control or direction over the performance of such service, both under contract of service and in fact; and
>
> B.  Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

17

C. Such individual is customarily engaged in an independently established trade, occupation, profession or business.

[Id. at 305 (citing N.J.S.A. 43:21-19(i)(6))].

We noted in Hargrove that "[t]he [Department of Labor and Workforce Development], the agency charged with implementation and enforcement of the WHL and WPL," had declared -- "without challenge since 1995" -- that the ABC test should govern employment status disputes under the WHL and had "applied the same test to employment-status issues under the WPL because of its similar purpose of furthering income security." Id. at 316. Accordingly, we held that "employment-status issues raised under the WPL or WHL -- i.e., whether a person retained to provide services to an employer is an employee or independent contractor -- are governed by the 'ABC' test." Ibid.

2.

In the wake of our decision in Hargrove, the Real Estate Commission adopted regulations to make clear that a real estate broker and a real estate salesperson may elect a business affiliation in which the salesperson is an independent contractor, not an employee. The Commission observed that, in accordance with "[h]istorical practice as well as current practice," real estate "licensees determine the nature of their business relationship." 48 N.J.R. 1900(a) (Sept. 19, 2016). The Commission proposed an amendment to

18

N.J.A.C. 11:5-4.1's title, replacing the term "[e]mployment agreements" with "[l]icensee business relationship agreements," and an amendment to N.J.A.C. 11:5-4.1(a) requiring a broker and a salesperson or referral agent to "enter into . . . a written agreement that contains the terms of their business relationship" before the salesperson or referral agent conducts real estate brokerage activity. Ibid.  The Commission also proposed a new subsection, N.J.A.C. 11:5-4.1(j), stating that it "interprets 'employment agreement,' 'employ,' and 'employing broker' in [the Brokers Act] and this section to permit an employment relationship or an independent contractor relationship between a broker and a broker-salesperson, salesperson, or referral agent."  Ibid.

The Commission explained that "[t]he proposed amendments will have a positive effect on licensees by conforming the rules to reflect the historical and current practice that licensees are free to agree to the type of business relationship that is appropriate for them."  Ibid.

After a period of public comment, in which all commenters supported the regulations, the Commission adopted the regulations effective on July 3, 2017.  49 N.J.R. 1910(a).

The Legislature addressed the question of real estate business affiliations the following year.  L. 2018, c. 71.  On August 10, 2018, it added new language to the Brokers Act's definitions of the terms "real estate broker-

19

salesperson" and "real estate salesperson," defining both categories to include individuals "contracted" by a licensed real estate broker as well as those "employed" by a broker. Id. § 2. In several provisions of the Brokers Act in which a salesperson or broker-salesperson had previously been defined as "employed" by a broker or as a broker's "employee," the Legislature added the terms "contracted," "contracting," "contractor," or "contracting broker." See id. §§ 4(b), 10, 11, 12, 17, 22.

Most significantly, the Legislature added to the Brokers Act a new section, N.J.S.A. 45:15-3.2, providing that

> a. No broker-salesperson or salesperson shall commence business activity for a broker and no broker shall authorize a broker-salesperson or salesperson to act on the broker's behalf until a written agreement, as provided in this subsection, has been signed by the broker and broker-salesperson or salesperson. Prior to an individual's commencement of business activity as a broker-salesperson or salesperson under the authority of a broker, the broker and broker-salesperson or salesperson shall both sign a written agreement which recites the terms under which the services of the broker-salesperson or salesperson have been retained by the broker.
>
> b. Notwithstanding any provision of [N.J.S.A.] 45:15-1 et seq. or any other law, rule, or regulation to the contrary, a business affiliation between a broker and a broker-salesperson or salesperson may be that of an employment relationship or the provision of services by an independent contractor. The nature of the business affiliation shall be defined in the written agreement required pursuant to subsection a. of this section.

20

[L. 2018, c. 71, § 3 (codified at N.J.S.A. 45:15-3.2).]

The Legislature provided that this new section "shall take effect immediately" and that the remainder of the amendments would take effect on January 1, 2018, "except the New Jersey Real Estate Commission may take any anticipatory administrative action as shall be necessary for the implementation of this act." Id. § 29.

3.

On December 20, 2021, shortly after the Appellate Division's first decision in this matter -- which applied the 2018 amendments to the Brokers Act only to contracts executed after the amendments' effective date -- A. 6206 was introduced in the Legislature. The bill included the following proposed addition to N.J.S.A. 45:15-3.2(b):

> If a current or previously written agreement exists or existed between the broker and the broker-salesperson or salesperson that defines, sets forth, identifies, or provides that the broker-salesperson or salesperson is or at any time has been an independent contractor of the broker, the broker-salesperson or salesperson shall be deemed to be or have been an independent contractor during the period in which the agreement is or was effective and shall not be classified as an employee for any purpose under any law, rule, or regulation for that period of time, except that the broker-salesperson or salesperson shall satisfy the test set forth in [N.J.S.A.] 43:21-19(i)(7)(K) in order to be deemed an independent contractor under [N.J.S.A.] 43:21-1 et seq. The broker-salesperson or salesperson shall not be required to

21

satisfy any other test for any other law, rule, or regulation, including, but not limited to, the tests set forth at or applied to [N.J.S.A. 34:11-4.1 et seq.] and [N.J.S.A. 34:11-56a et seq.] to be deemed an independent contractor as provided in this section for purposes of any other law, rule or regulation.

[A. 6206.]

The Assembly Housing Committee Statement to A. 6206 provided that the bill "reaffirms the intent of the Legislature, as stated in [L. 2018, c. 71] . . . that broker-salespersons and salespersons who agree with a broker to be independent contractors are not to be and historically have not been deemed employees of the broker," and that the bill also enforced "past written agreements regarding same." A. Hous. Comm. Statement to A. 6206 (Dec. 13, 2021). The Senate and General Assembly passed A. 6206, and sent it to Governor Murphy for his signature.

Governor Murphy conditionally vetoed the bill. In his veto message, the Governor noted that he had approved the 2018 amendments to the Brokers Act "providing that the business affiliation between a broker and a broker-salesperson or salesperson may be that of an employment relationship or independent contractor relationship." Governor's Veto Statement to A. 6206 (2021). The Governor recognized that "[c]ourts have interpreted the Brokers Act as prospective in effect, applying to contracts for the period beginning August 10, 2018," the date of the 2018 amendments to the Act. Ibid. He

22

acknowledged that A. 6206 was passed "to reaffirm the intent of the Legislature as stated in the Brokers Act, regarding the employment relationship or independent contractor relationship of real estate brokers, and to retroactively enforce past written agreements regarding same." Ibid. The Governor confirmed that he did "not object to the general intent of [A. 6206] to give certain provisions of the Brokers Act retroactive effect." Ibid.

Governor Murphy expressed concern, however, about a different aspect of the proposed bill. Ibid. He stated that "several of the bill's provisions, as drafted, could be used as a basis for other employers in the State to misclassify workers." Ibid. The Governor criticized language in A. 6206 that "would impose independent contractor-status upon an individual on the basis that the individual is exempt from coverage under the UCL," contrary to his Administration's position "that the UCL's categorical exemptions are specifically tailored to the context of unemployment benefits." Ibid. He stated that A. 6206, as passed by the Legislature, "could seriously erode the basic protections afforded to employees by allowing employers to use a categorical UCL exemption as a basis to deem an employee an independent contractor notwithstanding the particulars of that employee's relationship with his or her employer." Ibid. The Governor observed that, notwithstanding A. 6206's limitation to real estate broker-salespersons or salespersons, "the legal theories

23

upon which the bill relies could be used by other employers across the State to misclassify their employees as independent contractors." Ibid.

Accordingly, Governor Murphy recommended that the Legislature delete the terms that it had proposed to add to N.J.S.A. 45:15-3.2(b), including the reference to the UCL provision, N.J.S.A. 43:21-19(i)(7)(K), that had raised concerns about misclassification of employees outside the real estate industry. Ibid. The Governor recommended new language stating that N.J.S.A. 45:15-3.2 "shall apply retroactively to enforce but not change any written agreement between a broker-salesperson or salesperson and a broker where the written agreement defines, sets forth, identifies or provides that the broker-salesperson is or was an independent contractor." Ibid. He also recommended that the amendments to the Brokers Act "be retroactive to August 10, 2018." Ibid.

The Legislature agreed to the Governor's recommended changes to A. 6206. On January 18, 2022, it approved the final version of A. 6206. L. 2021, c. 486.

## C.

Against that backdrop, we construe the Brokers Act as amended in 2018 and 2022 to determine whether Kennedy may assert a claim under the WPL.

The plain language of the Brokers Act addresses the question raised by this appeal. A real estate broker and a broker-salesperson or salesperson

24

seeking to conduct real estate activities must execute a written agreement defining "the nature of the business affiliation" between the parties as either an employment relationship or an independent contractor relationship. N.J.S.A. 45:15-3.2(a), (b). The statute expresses no preference between the two options; that question is for the parties to resolve. N.J.S.A. 45:15-3, -3.2; -14 to -20.

Here, the real estate broker and the real estate salesperson agreed in writing to affiliate in an independent contractor relationship, thus complying with N.J.S.A. 45:15-3.2(a) and (b). The Brokers Act expressly defines the consequences of that choice; it provides that brokers and broker-salespersons or salespersons may affiliate in an independent contractor relationship, "[n]otwithstanding any provision of" the Brokers Act "or any other law, rule, or regulation to the contrary." N.J.S.A. 45:15-3.2(b). The Legislature's use of the word "notwithstanding" is significant; "[i]n construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993). Thus, in the Brokers Act, the Legislature clearly intended that if the parties' business affiliation agreement under N.J.S.A. 45:15-3.2 conflicts with another law, rule or regulation, the agreement will prevail.

25

That legislative intent is underscored by changes to A. 6206 that Governor Murphy recommended and the Legislature accepted in the 2022 amendments to the Brokers Act. L. 2021, c. 486; Governor's Veto Statement to A. 6206 (2021). The import of the recommended deletions in the conditional veto is plain: the Governor eliminated a reference to a UCL exemption and other proposed language in the bill so that the Brokers Act would not be invoked by employers in other industries in support of arguments that their employees should be considered independent contractors. He acted, in short, to ensure that the statute would operate within its intended bounds. Governor's Veto Statement to A. 6206.[3]

With respect to the real estate setting in which the Brokers Act applies, however, the Governor agreed with the Legislature that the 2018 amendments "shall apply retroactively to enforce but not change any written agreement between a broker-salesperson or salesperson and a broker where the written

---

[3] Relying on Governor Murphy's conditional veto, Kennedy and amicus curiae the New Jersey Department of Labor and Workforce Development urge a narrow construction of N.J.S.A. 45:15-3.2. They contend that at most, N.J.S.A. 45:15-3.2 mandates enforcement of the parties' agreement to an independent contractor relationship only when a claim arises under the Brokers Act itself and that the provision has no impact on the application of other statutes such as the WPL to real estate broker-salespersons or salespersons. We disagree. The interpretation of the Brokers Act urged by Kennedy and the Department not only lacks support in the conditional veto message, but it directly conflicts with the statutory language. See N.J.S.A. 45:15-3.2; Governor's Veto Statement to A. 6206.

26

agreement defines, sets forth, identifies or provides that the broker-salesperson or salesperson is or was an independent contractor." L. 2021, c. 486. N.J.S.A. 45:15-3.2's plain language and the Governor's conditional veto message are thus in accord.

Under the Brokers Act, the parties' agreement to an independent contractor affiliation is not merely one of several factors in the analysis, as the Appellate Division viewed it to be. See Kennedy, 474 N.J. Super. at 551. To the contrary, if the parties have agreed in writing to a business affiliation in compliance with the Brokers Act, that agreement is dispositive. N.J.S.A. 45:15-3.2(b). If a written agreement entered into pursuant to N.J.S.A. 45:15-3.2 states that the broker-salesperson or salesperson is an independent contractor, a court must enforce its terms.

Kennedy, who agreed in writing to affiliate with Weichert as an independent contractor, must accordingly be treated as an independent contractor "notwithstanding . . . any other law, rule, or regulation to the contrary," including the WPL. Ibid. For the period during which he worked as a Weichert real estate salesperson, Kennedy was not subject to the ABC test that governs employee classification disputes under the WPL pursuant to Hargrove, 220 N.J. at 312-16, or to any other classification standard set forth in statutes, regulations, or case law. Because he was an independent contractor

when he was affiliated with Weichert, Kennedy may not be deemed to have been Weichert's employee under the WPL, see N.J.S.A. 34:11-4.1(b), and he was not covered by that statute. He cannot assert the claim set forth in his complaint, a misclassification claim premised on the WPL.

Accordingly, the trial court erred when it denied Weichert's motion to dismiss the complaint pursuant to Rule 4:6-2(e).

## IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for an order dismissing Kennedy's complaint.


CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PATTERSON's opinion.